# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

MAPLE HILL HOMEOWNERS )
ASSOCIATION, a Delaware non-profit )
corporation, )
)
Plaintiff, )
)
) C.A. No.: CPU4-12-003085
v. )
)
NANCY A. NEWTON, CHIQUITA L. )
BRADLEY, KENNETH E. HOLBERT and )
JOANNE M. HOLBERT, PETER MEYER, )
ONJONET MOORE TORRY, MELAYA )
MOORE, MICHAEL D. BANTUM and )
CAROLINE P BANTUM, )
)
Defendants. )

Submitted: February 23, 2015
Decided: March 9, 2015
Revised: March 10, 2015

Richard L. Abbott, Esq.
Abbott Law Firm
724 Yorklyn Road, Suite 240
Hockessin, DE 19707
*Attorney for Plaintiff*

N. Christopher Griffiths
Connolly Gallagher, LLP
267 East Main Street
Newark, DE 19711
*Attorney for Defendants Kenneth E.
Holbert, Joanne M. Holbert, &
Nancy A. Newton*

Chiquita L. Bradley
9 Marlborough Court
New Castle, DE 19720
*Self-Represented Defendant*

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF MAPLE HILL'S MOTION FOR RE-ARGUMENT, MOTION TO AMEND AND APPLICATION FOR ATTORNEYS' FEES AND DEFENDANTS NANCY NEWTON'S AND KENNETH AND JOANNE HOLBERT'S MOTION FOR ATTORNEYS' FEES BASED ON BAD FAITH**

**RENNIE, J.**

## BACKGROUND

On July 24, 2014, this Court held trial on plaintiff Maple Hill Homeowner's Association's ("Maple Hill") breach of contract action which arose from the alleged non-payment of homeowner's assessment fees by Defendants Nancy A. Newton ("Newton"), Chiquita Bradley ("Bradley"), and Kenneth and Joanne Holbert ("the Holberts") (collectively, "Defendants").[1]

The Court took the matter under advisement and issued a written opinion on September 19, 2014 ("the Opinion").[2] In the Opinion, the Court held in favor of the Holberts and found that they did not breach their obligation to pay Homeowner's Association ("HOA") fees to Maple Hill. Specifically, the Court found that as a result of Maple Hill's improper refusal to accept the Holbert's payments, the Holberts were forced to hire an attorney and defend this lawsuit. Separately, the Court found in favor of Maple Hill against Newton, but held that Maple Hill prematurely filed a lien against Newton's property. As a result, Newton was found not liable for late fees or lien fees assessed prior to the premature filing of the lien. The Court, however, found that Newton's failure to pay HOA fees after the filing of the lien was not justified and found her liable for those payments. Finally, the Court held in favor of Maple Hill against Bradley. The Court found Bradley responsible for all of her HOA fees because she had not made any payments since she purchased her home. Notably, the Court limited the damages against each of the liable defendants to the amounts sought in the Complaint.

As a result of this limitation on damages, Maple Hill filed a Motion for Re-Argument, Motion to Amend the Pleadings and an accompanying Application for Attorneys' fees.[3] Defendants

---

[1] The parties submitted post-trial written summations on August 21, 2014.
[2] *Maple Hill Homeowners Association v. Newton*, 2014 WL 4662382 (Del. Com. Pl. Sept. 19, 2014).
[3] Maple Hill requested attorneys' fees as part of its pretrial pleadings in this action. The Court, in its September 19, 2014 Opinion, requested an affidavit from Maple Hill in support of its fees and

filed responses to Maple Hill's motions and Newton and the Holberts filed a Motion for Attorneys' Fees due to Maple Hill's bad faith.

## DISCUSSION
### A. Maple Hill's Motion for Re-argument

A motion for re-argument is limited to "reconsideration by the trial court of its findings of fact, conclusions of law, or judgment."[4] "A motion for re-argument is granted only if 'the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision.'"[5]

Maple Hill's motion for re-argument is based primarily on the decision by the Court to limit the damages awarded against Defendants to the HOA fees sought in the Complaint.[6] In support of its position, Maple Hill makes three arguments. First, it contends that the Court's decision to not consider evidence of amounts due and owing that was not requested in the Complaint constitutes unfair surprise to Maple Hill. On that point, Maple Hill posits that as of the date of trial, no one had questioned whether it could pursue HOA fees not requested in the Complaint. Second, Maple Hill argues that Defendants stipulated to its exhibits, which reference amounts due and owing as of January 2014, as well as its intent to have its main witness testify about the running tally of past due assessments as of the date of trial.[7] Third, Maple Hill argues that it will be unduly prejudiced by the Court's refusal to consider the damages not referenced in

---

responses from Defendants to the request.

[4] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969).

[5] *State Farm Fire & Cas. Co. v. Middleby Corp.*, 2011 WL 2462661, at *2 (Del. Super June 15, 2011)(quoting *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006)).

[6] Maple Hill also requests that the Court specify in its order a sum certain due from the Holberts for the period of time Maple Hill refused their payments.

[7] *See* Pl.'s Ex. 15, 16, 17. *See also* Defs.' Ex. 24. Maple Hill refers to invoices for Newton, the Holberts and Bradley showing unpaid assessments through January 2014.

3

the Complaint, because it will require Maple Hill to instigate new litigation to collect these assessments.

After considering the arguments advanced by the parties in their motions and at oral argument, the Court will amend the Opinion to include applicable damages for amounts sought beyond the Complaint. In doing so, however, the Court notes that it does not find most of Maple Hill's arguments on this point particularly compelling. In fact, the only reason the Court is allowing the damages sought beyond the period of the Complaint is because the record reflects that there was some scant testimony at trial by Maple Hill's representative, Yutta Douglas ("Douglas"), about bills allegedly due and owing through January 2014 for each of the Defendants. Admittedly, this testimony was overlooked by the Court as tangential and not germane to the damages sought in the Complaint, particularly, because there was no statement by any party prior to trial that amounts beyond the filing of the Complaint would be at issue.[8] Additionally, the parties' conduct and the direction in which the trial proceeded, lead to the Court's understanding. The vigor with which Defendants challenged the HOA fees allegedly due through the period of the filing of the Complaint, was incongruent with their failure to make such arguments for HOA fees testified to beyond the Complaint. Thus, it appeared to the Court that Defendants understood that those HOA fees were not at issue at trial. Nonetheless, the record reflects that there was sufficient testimony on the issue such that the Defendants had a fair opportunity to refute and defend the amounts sought beyond the period of the Complaint. Therefore, in accordance with Court of Common Pleas Civil Rule 15(b), the Court will deem the Complaint to be amended to reflect the damages sought and testified to at trial.

---

[8] Maple Hill had ample opportunity but failed to allege an ongoing violation as part of the relief sought in the Complaint as is customary in these types of collection cases.

4

This was not a text book example of how a case should be tried, but after considering the totality of the circumstances, the relative lack of prejudice to each of the parties, and the judicial efficiency in avoiding a subsequent trial on amounts admittedly not paid, the Court will amend the Opinion to include amounts due beyond the Complaint.

### 1. Chiquita Bradley

In the Opinion, the Court held that Bradley was responsible for $1,935.44 in HOA fees, late fees and lien fees through the period of the Complaint. At the hearing on the Motion for Re-argument, Bradley admitted that she is responsible for non-payment of fees. As a result, the Court adds $1,671.29 to her amount through and including January of 2014, which represents HOA fees, late fees and lien fees. Accordingly, Bradley is responsible for a total of $3,606.73 in HOA fees and expenses through January 2014.

### 2. Nancy Newton

In the Opinion, the Court held that Newton owed $791.18 in HOA fees, late fees and lien fees through the period of the Complaint. Because Newton did not posit a justifiable defense for non-payment through January 2014, the Court finds that she owes an additional $892.61 which represents HOA fees, late fees and lien fees from the Complaint to January 2014. Accordingly, Newton owes a total of $1,683.79 in HOA fees and expenses through January 2014.

### 3. Kenneth and Joanne Holbert

With respect to the Holberts, the Court, in the Opinion, held that they were not responsible for payment of any late or lien fees in connection with the HOA fees. As detailed in the Opinion, the Holberts had made numerous attempts to pay their HOA fees, but Douglas improperly refused to accept these payments. The Holberts mailed their payments via certified

5

mail, return receipt, to the location designated by Maple Hill for payment of fees. This was done over a period of 5 years and each time Douglas refused to accept or acknowledge the mailing. As a result, the checks were returned to the Holberts as either "refused" or "unclaimed". The Holberts even took the extra step to have all of the payments that had been refused by Douglas consolidated into one check and hand delivered by special process server to Douglas at her apartment. Notably, Douglas admitted at trial that she received the payment but, when she saw that it was from the Holberts, she refused to accept it. Instead, she returned it to the Holberts' attorney's office. The Court viewed this action by Douglas as improper, calculated and in furtherance of her effort to continue to malign the Holberts to the other Maple Hill homeowners as "deadbeats" and "freeloaders". In addition, knowing full well that her refusal to accept their payments would artificially place the Holberts in arrears, Douglas, acting on behalf of Maple Hill, brought suit against the Holberts for failure to pay HOA fees. This forced the Holberts to then hire and pay competent counsel to defend this baseless claim.

As a result of this egregious behavior, this Court ruled that the Holberts were not liable for any late fees or lien fees assessed by Maple Hill that was the subject of this action. The Court did, however, rule that the Holberts were required to submit the HOA payments that they attempted to make to Douglas from 2007 through the filing of the Complaint. That amount was $1,540.

As to payments due by the Holberts after the filing of the Complaint, the Court holds that they must pay their HOA fees through January 2014, however, without any late fees or lien fees. Although Maple Hill homeowners have an obligation to pay homeowner's fees, the unique circumstances present in this case require that late fees for non-payment by the Holberts not be assessed. Because of Douglas' history of non-acceptance of the Holberts' payments, it was

6

reasonable under these unusual circumstances that the Holberts ceased their attempts of payment, particularly after suit was filed by Maple Hill. Short of a Court ruling, it would be an exercise in futility to continue to send money to the address designated by Maple Hill knowing that those payments would be ignored or refused. Accordingly, the Court finds that the Holberts must make HOA payments in the amount of $2,360 to Maple Hill for the period from 2007 to January 2014.

## B. Maple Hill's Application for Attorneys' Fees

Delaware adheres to what is known as the American Rule, where each party in litigation must bear its own costs and attorneys' fees, unless there is a contractual or statutory basis for the award of attorneys' fees.[9] Thus, with a few exceptions, a court may not order court costs and attorneys' fees to be paid by the losing party unless such payment is authorized by some provision of statute or contract.[10] Further, the determination of whether attorneys' fees requested in a particular case are reasonable is within the discretion of the Court.[11]

Prior to its Motion for Re-argument, Maple Hill sought attorneys' fees in the amount of $14,974.12.[12] Maple Hill subsequently amended that amount to include fees in the amount $19,968.50 that were incurred in bringing its motions and responding to the Holberts' and Newton's request for attorneys' fees based on bad faith. Based on the Court's judgment in favor of Maple Hill against Defendants Newton and Bradley, Maple Hill allocates the *pro rata* share of

---

[9] *Dixon v. Council of Cliff House Condominium*, 2009 WL 5455537 at *3 (Del. Com. Pl. Dec. 8, 2009).

[10] *Id.* The Hampton Green Maintenance Declaration authorizes Maple Hill to collect "reasonable attorneys' fees" when prosecuting assessment actions. *See* Pl.'s Trial Ex. 2.

[11] *Dixon*, 2009 WL 5455537 at *4.

[12] *See* Pl.'s Second Amended Application for attorneys' fees. The original application for attorneys' fees called for damages in the amount of $7,724.12; however, Maple Hill amended this amount to $14,974.12 due to an accounting error.

7

attorneys' fees as twenty-nine percent for Newton and seventy-one percent for Bradley.[13] Thus, under Maple Hill's allocation of the $19,968.50 sought, Newton would be responsible for $5,790.86 and Bradley would be responsible for the remaining $14,177.635.

The Court does not find this allocation of fees to be appropriate under the circumstances. This case started out with several additional defendants.[14] According to the time records submitted by Maple Hill in connection with its request for attorneys' fees, many of the entries reflect common tasks attributable to all or multiple of the defendants and, thus, should be allocated accordingly. Further, the tasks that were specific to any of the liable Defendants should be allocated to his/her obligation for attorneys' fees. Accordingly, the Court will divide the share of the responsibility for legal fees among the liable Defendants on that basis.[15]

### 1. Services Attributable to the Litigation of All Remaining Defendants

The Court finds that the total cost of services necessarily generated by Maple Hill in the litigation against the remaining Defendants in this action is $16,183.13.[16] The Court looked at the tasks that were performed to generate those fees, and ascribed the three remaining Defendants their proper pro *rata* portion, as applicable. Thus, the *pro rata* portion of those common fees attributable

---

[13] *See* Pl.'s Application for Attorneys' Fees, Ex. A

[14] As the caption indicates, there were seven defendants in this action. Kenneth and Joanne Holbert and Michael and Caroline Bantum were each counted as two separate defendants.

[15] The Court went through each of Maple Hill's time entries from June 2012 through January 2015 (the time period for which it sought fees) and allocated fees for services rendered that pertained to each of the Holberts, Bradley and Newton. Those fees and time entries were set forth in Exhibit A to Plaintiff's reply to certain Defendants' Response to Application for Attorneys' Fees. The fees for those tasks that were generally applicable to the litigation such as preparation of the Complaint or preparation of exhibit binders were divided among the number of defendants involved in the case at that particular time. In its allocation of the time entries, the Court did not include any time attributable to issues involving the Attorney General's office, corporate governance, or matters specific to defendants that did not proceed to trial.

[16] Task entries that fit within this category were either divided among Bradley, Newton and the Holberts; Newton and the Holberts; or all of the defendants that were named in the Complaint (i.e. the preparation of the Complaint).

to the remaining Defendants is as follows: Newton $5,254.59, Bradley $3,748.95 and the Holberts $6,794.59.

## 2. Services Attributable to the Litigation of Remaining Individual Defendants

The Court finds that fees attributable solely to the prosecution of Nancy Newton total $275.[17] When that amount is added to her share of the common legal expenses, she is responsible for $5,529. As to the Chiquita Bradley, the Court finds that fees attributable solely to her total $110.[18] When that amount is added to her share of the common legal expenses, she is responsible for $3,858.95. Based on the Court's ruling in the Opinion and in this Memorandum Opinion, the Holberts are not responsible for any attorneys' fees generated by Maple Hill in this litigation. Accordingly, when the Holbert's fees are excised from the total fees, defendant Newton is responsible for attorneys' fees in the amount of $5,529.59 and defendant Bradley is responsible for attorneys' fees in the amount of $3,858.95.

## C. Holberts' and Newton's Motion for Attorneys' Fees Due to Bad Faith

Defendants Newton and the Holberts seek attorneys' fees against Maple Hill due to bad faith.[19] In determining whether to shift attorneys' fees due to bad faith, the moving party must establish bad faith by clear and convincing evidence.[20] The purpose behind this exception is not to shift fees to the prevailing party at trial but rather to "deter abusive litigation in the future,

---

[17] The charges included in this calculation reflect entries from Maple Hill's counsel's attorneys' fee invoices dated: Nov. 8, 2012, April 13, 2013, May 4, 2013, June 11, 2013 and June 10, 2014.

[18] The charges included in this calculation reflect entries from Maple Hill's counsel's attorneys' fee invoices dated February 11, 2014, March 11, 2014 and August 14, 2014.

[19] Outside of statutory authority or a contractual provision, shifting of fees are typically not awarded by Courts of law. However, where equitable principles are ancillary but intimately related to the issue underlying the shifting of fees, a court of law "has jurisdiction to award attorneys' fees even if no contract or statute requires it." *Citizens Bank v. Design-A Drape, Inc.,*2008 WL 3413329 at *2 (Del. Super. 2008), *aff'd, 966 A.2d 347* (Del. 2009). *See also Ciappa Construction, Inc. v. Innovative Property Resources, LLC,* 2007 WL 914640 at *2 (Del. Super. March 2, 2007).

[20] *Arbitrium (Cayman Islands) Handels AG v. Johnston,* 705 A.2d 225, 231 (Del. Ch. 1997), *aff'd,*720 A.2d 542 (Del. 1998).

thereby avoiding harassment and protecting the integrity of the judicial process."[21] Hence, the Court does not take the shifting of fees under this exception lightly. Moreover, even where the requirements of the bad faith exception are met, the Court is still required to grant only those fees that are reasonable.[22]

As discussed above, Delaware Courts follow the American Rule for payment of attorneys' fees, which states that "litigants are normally responsible for paying their own litigation costs."[23] An exception to the American Rule vests discretion in Courts to shift fees in the event of conduct that rises to the level of bad faith. As the Delaware Court of Chancery recognized in *Beck*:

> The bad faith exception to the American Rule applies in cases where the court finds litigation to have been brought in bad faith or finds that a party conducted the litigation process itself in bad faith, thereby unjustifiably increasing the costs of litigation. There is no single standard of bad faith that warrants an award of attorneys' fees in such situations; rather, bad faith is assessed on the basis of the facts presented in the case.[24]

Newton and the Holberts base their motion on certain factual findings made by the Court in the Opinion. Specifically, in the Opinion the Court found that the president of Maple Hill, Jutta Douglas, filed a lien against Newton's property for non-payment of HOA fees, despite reaching a payment arrangement with Newton to pay her HOA fees in the spring of each year. As a result, the Court rescinded all late fees and lien fees assessed against Newton prior to the filing of the premature lien. The Court, however, found Newton liable for the HOA fees after the premature lien filing because she simply failed, without justification, to make those payments.

---

[21] *Brice v. Department of Correction,*704 A.2d 1176, 1179 (Del. 1998).
[22] *Johnston v. Arbitrium (Cayman Islands) Handels AG,* 720 A.2d 542, 546-47 (Del. 1998).
[23] *SIGA Technologies v. PharmAthene, Inc.,* 67 A.3d 330, 352 (Del. 2013).
[24] *Beck v. Atl. Coast PLC,* 868 A.2d 840, 850-51 (Del. Ch. 2005).

Newton, as a resident and homeowner, has a continuing obligation to the other residents of Maple Hill to pay her share of HOA fees. Her failure to pay the assessments causes harm to the Homeowner's Association as a whole, and Newton is not absolved of the obligation to pay the assessments.[25] Under those circumstances, the Court finds that Douglas' action in prematurely filing the lien, coupled with Newton's failure to make any payments after that point, does not rise to the level of bad faith which requires the shifting of fees.

As to the Holberts, the Court found that Douglas deliberately and improperly refused to accept or acknowledge HOA payments from the Holberts since 2007, despite their numerous efforts to pay by various different means. Apart from the various unclaimed certified mailings of payments by the Holberts, Douglas acknowledged at trial that she received an envelope that was taped to her door, via special process server, on behalf of the Holberts, which contained payment of their fees. Douglas testified at trial that she refused to open the envelope and instead physically returned it to the Holberts' attorneys' office. Douglas' repeated intentional refusal to accept the Holberts' payments artificially placed them in arrears, and Douglas improperly placed liens against their property. In addition, despite knowing that the Holberts were attempting to make payments, Douglas maligned them in public letters to the community as "deadbeats" and "freeloaders." Moreover, Douglas caused Maple Hill to bring this action against the Holberts to collect fees, thereby forcing them to incur the expense of hiring counsel to defend them at trial.

---

[25] *See Park Centre Condominium Council v. Epps*, 1997 WL 817875 (Del.Super. May 16, 1997) (holding that the obligation to pay assessments of the condominium association is not dependent upon the fulfillment of any obligation which the association may owe to the homeowner).

11

These, in the Court's view, are the types of facts that require the shifting of fees under the bad faith exception to the American Rule.[26]

In response to the Holbert's and Newton's application for attorneys' fees due to bad faith, Maple Hill makes several arguments. The summary of its arguments are as follows: 1) There was no finding of bad faith by this Court in the Opinion; 2) The Court in its finding of facts ignored Maple Hill's countervailing points of fact related to bad faith; 3)The grant of the Motion for Re-argument precludes any finding of bad faith; 4) No claim for bad faith was pled pre-trial by Defendants and thus, such a claim is precluded; and 5) As a non-profit Delaware Corporation without any assets, any judgment against Maple Hill will be uncollectable. The Court addresses Maple Hill's several arguments seriatum.

1. The Court's Opinion Did Detail Actions By Maple Hill In Bringing This Action That Constitute Bad Faith.

As detailed above, the Court did find that Douglas refused to accept Newton's HOA payments, labeled them as delinquents, and then filed suit against them for being delinquent on their payments, knowing that she improperly refused their attempted payments. Simply because the Court did not use the particular phrase "bad faith" in its Opinion, does not mean that it did not make factual findings demonstrating that Douglas acted in bad faith. To be sure, Douglas' actions, as detailed in the Opinion, constitute bad faith.

2. Maple Hill's Purported Countervailing Facts Do Not Negate A Finding Of Bad Faith.

Distilled to its essence, Maple Hill's argument on this point is that the Holbert's had personal animus against Douglas and never intended to pay the assessments. Maple Hill further

---

[26] *See Design –A- Drape Inc.,* 2008 WL 3413329 at * 2 (granting attorneys' fees under the bad faith exception to the American Rule where Plaintiff could not have reasonably thought that Defendant would have been responsible for alleged debt).

argues that the Holberts should have attempted alternate means to have the checks delivered. In addition, Maple Hill argues that the checks tendered by the Holberts did not include progressively mounting payments and thus, this evidences a lack of true desire to pay the entire HOA bill. These arguments are unavailing. They don't even begin to address the true issue regarding Douglas' bad faith against the Holberts. It is incredible to suggest that clear evidence of Douglas' bad faith is negated by the Holberts' purported animus against her, particularly when the record demonstrates that the Holberts sent timely checks over a five year period to the location designated by Maple Hill. Equally incredible is Maple Hill's argument that the Holberts should have utilized alternative means to tender their HOA payments and should have increased the amount of their checks progressively with each payment. This argument ignores the factual findings made by the Court and established in the record that (1) the Holbert's did mail their checks to the place designated for payment, (2) they wanted to ensure receipt of their payment, hence the certified mail; and (3) they eventually attempted to make a payment via special process server which included all of the past attempted payments, and which was blatantly refused by Douglas. Accepting Maple Hill's position is akin to clipping the wings on a bird and then condemning it for not being able to fly. None of Maple Hill's so called countervailing facts sanitizes the egregious actions taken by Douglas in unjustifiably refusing payment from the Holberts and then suing them for delinquency.[27]

### 3. The Court's Granting Of Maple Hill's Motion For Re-argument Does Not Preclude A Finding Of Bad Faith Against Maple Hill.

The Court granted Maple Hill's Motion For Re-argument and ruled on amounts owed by

---

[27] "[A] party [who] has 'some evidence' to support his claims, may still be found to have acted in bad faith where that evidence is trivial in comparison to the evidence against him." *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 2013 WL 5152295 at *10 (Del. Ch. Sept. 16, 2013).

13

the Defendants for non-payment of their HOA fees. As to the Holberts, however, the Court found that the non-payments were justified under the circumstances, specifically due to Douglas' bad faith actions. Therefore, Maple Hill cannot avoid a finding of bad faith on this basis.

4. The Timing Of The Holbert's Request For Attorneys' Fees Due To Bad Faith Was Proper.

Maple Hill contends that a request for attorneys' fees under the bad faith exception to the American Rule requires that such a request be asserted as a compulsory counterclaim. Not surprisingly, Maple Hill fails to cite to any legal authority for this alleged requirement. It is customary for a party after proceeding well into trial and often at the conclusion of trial, to make an application for attorneys' fees due to another party's bad faith conduct. This is the case because often the determination of bad faith is not made by the Court or discovered by the affected party until after the trial. So long as there is a proper mechanism by which the non-moving party receives a fair opportunity to challenge such a motion and be heard, a finding of bad faith by a Court will not offend the notions of due process.

After the Court issued its Opinion, in which it made findings of fact that detailed Douglas' bad faith conduct, counsel for the Holberts filed a detailed motion requesting that the Court order Maple Hill to pay their legal fees due to Douglas' bad faith. Maple Hill had the opportunity to and did in fact, respond to the Holberts' application for fees. Moreover, the Court held oral argument on the application, and Maple Hill presented numerous arguments against the Holbert's application for fees. Thus, Maple Hill's characterization of the Holbert's motion for attorneys' fees as "trial by ambush" is unfounded.

14

### 5. A Judgment Entered Against A Non-Profit Corporation Is Not Necessarily Uncollectable.

Maple Hill argues that it would be futile to enter a judgment for fees against it because its status as a non-profit entity would make such a judgment uncollectable. This argument is without merit. The mere fact that an entity has been ascribed non-profit status, does not make it judgment proof. It is well established that non-profit entities in Delaware have separate legal identities and can sue and be sued—hence judgments can be entered against them. So long as there is a valid legal basis to enter a judgment against a wrongdoer, this Court will not concern itself with the collectability of the judgment that it imposes. The execution upon a judgment is commenced through a different process and in a separate proceeding.

The Court finds that after considering the Holberts' application for attorneys' fees due to bad faith and Maple Hill's arguments against the Holberts' request for attorneys' fees, the Holberts have met their burden of establishing by clear and convincing evidence that Maple Hill brought this action against them in bad faith. Accordingly, Maple Hill is required to pay a portion of the legal fees that the Holberts incurred in defending this action.

### 6. The Reasonableness of The Fees Sought By The Holberts

Counsel for the Holberts, N. Christopher Griffiths, Esquire, submitted an affidavit and detailed time records that set forth the fees incurred in defending the Holberts and Newton in this action. According to the time records, the Holberts and Newton incurred $43,204.09 in attorneys' fees.[28] Mr. Griffiths affirms that 80% of the time was spent on the Holberts' defense and 20% on Newton's defense. According to this time allocation, the Holberts' attorneys' fees in defending this action is $34,563.27. After deducting fees that the Court felt were not

---

[28] The Court began its calculation of the Holberts' attorneys' fees from the period after the filing of the Complaint.

15

necessary to the defense of the Holberts' in this matter, including time spent relating to issues at the Attorney General's Office, and corporate governance issues, the Court finds that the reasonable and necessary fees incurred by the Holberts in defending this action is $8,500.[29] Accordingly, Maple Hill is responsible to pay that amount to the Holberts.

**CONCLUSION**

IT IS HEREBY ORDERED that Maple Hill's Motion to Amend the Pleadings and Motion for Re-argument are Granted in Part and Denied in Part. The amended amount due from Chiquita Bradley for Homeowners' Assessment Fees and Expenses is $3,606.73. The amended amount due from Nancy Newton for Homeowners' Assessment Fees and Expenses is $1,683.79. The amended amount due from Kenneth and Joanne Holbert for Homeowners' Assessment Fees is $2,360.

IT IS FURTHER ORDERED that Maple Hill's Motion for Attorneys' Fees is granted against defendant Nancy Newton in the amount of $5,529.59, plus post-judgment interest at the rate of 6% per year until paid in full, and defendant Chiquita Bradley in the amount of $3,858.95, plus post-judgment interest at the rate of 6% per year until paid in full. Maple Hill's Motion for Attorneys' Fees is denied as to defendants Kenneth and Joanne Holbert.

IT IS FURTHER ORDERED that defendants Kenneth and Joanne Holbert's Motion for Attorneys' Fees Due to Bad Faith is granted; Maple Hill shall pay the Holberts' attorneys' fees and expenses in the amount of $8,5000, plus post-judgment interest at the legal rate per year until paid in full. Defendant Nancy Newton's Motion for Attorneys' Fees Due to Bad Faith is denied.

---

[29] In making this determination, the Court applied the factors set forth in case law and the Delaware Rules of Professional Conduct 1.5 (a), to assess the reasonableness of the attorneys' fees incurred by the Holberts. *See also Dixon*, 2009 WL 5455537 at *4.

IT IS FURTHER ORDERED that Maple Hill shall, within ten (10) days of payment by a defendant, rescind all liens against that defendant's property.

**IT IS SO ORDERED this 10th day of March, 2015.**

_____
Sheldon K. Rennie,
Judge