COURT OF CHANCERY
OF THE
STATE OF DELAWARE

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: May 28, 2015
Date Decided: August 14, 2015

Francis G.X. Pileggi, Esq.
Aimee M. Czachorowski, Esq.
Eckert Seamans Cherin & Mellott, LLC
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801

Samuel T. Hirzel, II, Esq.
Proctor Heyman Enerio LLP
300 Delaware Avenue
Wilmington, DE 19801

RE:   *Holley v. Nipro Diagnostics, Inc.*
Civil Action No. 9679-VCP

Dear Counsel:

Before me is a dispute over whether certain fees qualify for advancement. Plaintiff, George Holley, filed this action on May 21, 2014, seeking advancement of legal fees and expenses from Defendant, Nipro Diagnostics, Inc. ("Nipro"). On December 23, 2014, I granted Holley's motion for partial summary judgment, holding that he was entitled to the advancement requested ("*Holley I*").[1] On March 13, 2015, I issued an oral ruling denying Nipro's motion under Court of Chancery Rule 60(b) seeking relief from *Holley I* on the

---

[1]     *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411 (Del. Ch. Dec. 23, 2014) [hereinafter "*Holley I*"].

basis of newly discovered evidence ("*Holley II*").[2]  Holley then moved to compel

payment of certain still-disputed fees.   In this Letter Opinion, I hold that those

fees are advanceable.

## I.    BACKGROUND

A more complete history can be found in my prior rulings, which, for the

sake of brevity, I do not repeat here.[3]  The crux of the present dispute relates to

$294,262.96 in total fees and expenses charged by two consulting firms hired by

Holley: National Economic Research Associates ("NERA") and Renaissance

Associates, Ltd. ("Renaissance").   The dispute over these fees, the "Disputed

Fees," is the sole issue requiring resolution.

In brief summary, Holley was prosecuted by the New Jersey United States

Attorney criminally (the "Criminal Action") and by the SEC civilly (the "SEC

Action") for violations of insider trading laws.  Both actions stem from the same

course of conduct by Holley.  Holley eventually pled guilty in the Criminal Action

to some, but not all, of the charges initially brought by the government, and Holley

entered into a consent judgment in the SEC Action for the same wrongdoing,

---

[2]     *Holley v. Nipro Diagnostics, Inc.*, C.A. No. 9679-VCP (Del. Ch. Mar. 13, 2015) (TRANSCRIPT) [hereinafter "*Holley II*"].

[3]     *Holley I*, at \*1-3, \*7; *Holley II,* at 4-6.  Unless otherwise defined, capitalized terms have the same meaning as in *Holley I* and *Holley II*.

which again did not encompass all of the relief initially sought. In *Holley I*, I held that the fees and expenses incurred in the SEC Action were advanceable.[4] Holley contends that the Disputed Fees relate to both the SEC Action and the Criminal Action, making them advanceable under Delaware law. Nipro argues that the Disputed Fees are non-advanceable because they relate solely to the Criminal Action.

## II.    ANALYSIS

The dispute here is not about reasonableness; instead, it concerns whether the fees and expenses should be allocated or apportioned to the SEC Action, in which case they are advanceable, or the Criminal Action, in which case they are not advanceable. This Court previously has held that, in actions where only certain *claims* are advanceable, the Court generally will not determine at the advancement stage whether fee requests relate to covered claims or excluded claims, unless such discerning review can be done realistically without significant burden on the Court.[5] Oftentimes, it cannot be done easily and will be deferred to the

---

[4]    As stated in *Holley II*, the SEC Action also includes the SEC Investigation.

[5]    *See Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *2 (Del. Ch. Jan. 8, 2010) (noting clear temporal divide making such categorization of fees feasible).

indemnification stage.[6]  If fees cannot be apportioned with rough precision between advanceable claims and non-advanceable claims, or the work was useful for both sets of claims, then the fees will be advanced in whole.[7]  This same line of reasoning has been held to apply to counsel representing multiple defendants.  In such an instance, Chancellor Bouchard determined that such fees were wholly advanceable if the expenses would have been incurred for the advancee's own defense, regardless of the existence of other co-defendants.[8]

Just as among claims, and just as among co-defendants, the same logic applies here as among different proceedings: if the fees would have been incurred independently in defense of the advanceable proceeding, such fees are wholly advanceable, even though the fees also were useful or applicable in a non-advanceable proceeding.  As applied to these facts, the question is this: Would the Disputed Fees have been incurred in defense of the SEC Action even if there was no Criminal Action?  If the answer is yes, then the Disputed Fees are advanceable.

---

[6]   *See Danenberg v. Fitracks*, 2012 WL 11220, at \*6 (Del. Ch. Jan. 3, 2012) (rejecting the *Xu Hong Bin* approach as unworkable on the facts).

[7]   *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 408 (Del. Ch. 2009).

[8]   *Konstantino v. Angioscore*, C.A. No. 9681-CB (Del. Ch. Feb. 16, 2015) (TRANSCRIPT) at 10-12.

The SEC Action and the Criminal Action initially proceeded in tandem. On August 19, 2011, the SEC Action was stayed pending resolution of the Criminal Action. Holley entered a guilty plea in the Criminal Action on August 8, 2012. The stay in the SEC Action later was lifted and Holley entered into a consent judgment in that action in December 2014. The Disputed Fees in this case involve invoices dated June 2, 2011 through November 11, 2011. At least some of that work occurred after the SEC Action was stayed. Thus, the Court must answer the counterfactual question of whether these fees would have been incurred if only the SEC Action existed, notwithstanding the fact that the SEC Action was stayed.

Holley's attorneys who coordinated his defense of the various actions are the most competent to opine as to what would have been required for the defense of the SEC Action, even if the Criminal Action did not exist. Holley's Delaware counsel and his New Jersey counsel both submitted affidavits averring that the fees incurred would have been necessary solely for the defense of the SEC Action.[9] In most cases, unless the certifications obviously were in error or were not made in good faith, this should end the matter. "Advancement is not the proper stage for a

---

[9]    Affidavit of John D. Tortorella in Supp. of Pl.'s Mot. for Ruling on Disputed Fees [hereinafter "Tortorella Aff."] Ex. 2 ("Certification of Samuel T. Hirzel, Esq.") ¶ 2 (Delaware counsel); Tortorella Aff. Ex. 3 ("Supplemental Affidavit of Kevin H. Marino") ¶ 2 (New Jersey counsel).

detailed analytical review of the fees, whether in terms of the strategy followed or the staffing and time committed. Typically, a good faith certification from counsel should suffice. In the absence of clear abuse, the fees should be advanced."[10]

Nipro does not argue that the certifications were not made in good faith. Instead, Nipro asks this Court to examine the invoices and conclude, notwithstanding the certifications of counsel, that, in the hypothetical world in which only the SEC Action existed, the Disputed Fees would not have been incurred in defense of that action. As an outsider to the litigation and on a paper record, the Court is ill-equipped to make that determination. "For a Court to second-guess, on a hindsight basis, an attorney's judgment concerning whether to retain an expert for a specific purpose, is hazardous and should whenever possible be avoided."[11]

I take Plaintiff's attorneys' certifications as the best evidence that the Disputed Fees would have been incurred solely in defense of the SEC Action. The arguments advanced by Plaintiff in that regard are plausible: the defense of the

---

[10] *Duthie v. CorSolutions Med., Inc.*, 2008 WL 4173850, at *2 (Del. Ch. Sept. 10, 2008).

[11] *Arbitrium (Cayman Is.) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30), *aff'd*, 720 A.2d 542 (Del. 1998).

Criminal Action and the SEC Action largely overlapped because the same conduct was at issue in each proceeding; NERA provided a market analysis that would have been required for the SEC Action and the Criminal Action; and Renaissance provided a forensic analysis of computer data and interviewed key witnesses, work that likely would have been required for either action.

Nipro's main arguments to the contrary are unavailing.[12] I address them briefly for completeness. With respect to Renaissance, Nipro argues that those fees could not have been related to the SEC Action because they occurred after the SEC Action was stayed. This argument misconstrues the inquiry, which is whether those fees would have been incurred if the Criminal Action did not exist. With that focus in mind, I conclude that Nipro's reliance on the stay is misplaced. Because there was overlap between the Criminal Action and the SEC Action, it would not be surprising if the work of a consultant, like Renaissance, could be needed in both actions. Nipro has advanced no other colorable basis for challenging the

---

[12] Nipro relies extensively on the fact that Plaintiff's New Jersey counsel did not seek advancement for a meeting for which Plaintiff did seek advancement as to another attendee, Renaissance. Holley provided a convincing explanation for this apparent discrepancy. Pl.'s Reply 3-7. In any event, this $2,648.25 charge is exactly the sort of line-item review that is inappropriate at the advancement stage. *E.g.*, *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 177 (Del. Ch. 2003).

Renaissance fees. Also, I note that the Renaissance bills disputed by Nipro all bear the same matter number as the earlier bills that Nipro paid and did not dispute. This suggests that Renaissance was engaged in the same overarching project throughout the engagement.[13]

As to the NERA fees, I first note that, although the final invoice bears the date August 24, 2011, it was for work done between July 1 through July 31, 2011. Accordingly, NERA's fees were incurred while the SEC Action was active. Nipro relies on the fact that the "Re:" line on the April 27, 2011 invoice that it did not dispute referred to both the SEC Action and the Criminal Action,[14] while the "Re:" lines on the four later invoices that it does dispute refer only to the Criminal Action.[15] Bearing in mind that the invoices for the disputed and undisputed invoices all bear the same project number,[16] I find the differences in the "Re:" lines

---

[13]      Def.'s Answering Br. Ex. B at GH-REN 1, GH-REN 3, GH-REN 4, GH-REN 5, GH-REN 11.

[14]      Def.'s Answering Br. Ex. A at GH-NERA 1.

[15]      *Id.* at GH-NERA 7, GH-NERA 16, GH-NERA 21, GH-NERA 26.

[16]      *Id.* at GH-NERA 2, GH-NERA 8, GH-NERA 17, GH-NERA 22, GH-NERA 27.

to be too slim a reed to warrant overriding the affidavits of Plaintiff's counsel in support of advancement.

Nipro's contentions do not convince me that the Disputed Fees relate only to the Criminal Action and would not have been incurred in the SEC Action. Each consulting firm used one project number; there is no indication that either NERA or Renaissance, in the disputed invoices, treated the Criminal Action differently than the SEC Action; nor is there any readily apparent basis in these invoices to allocate charges among those actions. Indeed, the invoices themselves are as Plaintiff described them: the NERA invoices refer to one continuous market analysis project and the Renaissance invoices relate to forensic data analysis and witness interviews. Nothing in the line-item descriptions leads me to doubt Plaintiff's attorneys' representations that the Disputed Fees would have been incurred in the SEC Action even if the Criminal Action did not exist. Nipro's contrary arguments involving the subject lines of the cover letters and the timing of the work do not overcome the good faith attorney certifications. Nor do I have any independent reason to doubt those certifications.

## III. CONCLUSION

For the foregoing reasons, I conclude that the Disputed Fees qualify for advancement because they would have been incurred if only the SEC Action

existed. Thus, Plaintiff is entitled to advancement of the $294,262.96 at issue here. In addition, pursuant to the March 13, 2015 advancement order governing fee disputes in this case, I hold that Holley is entitled to the reasonable attorneys' fees and expenses he incurred in pursuing this motion.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Donald F. Parsons, Jr.*

Donald F. Parsons, Jr.
Vice Chancellor

DFP/ptp