H. Frederick JOHNSTON, Sandra Spillane and Technicorp International II, Inc., a Delaware corporation, Defendants Below, Appellants,

v.

ARBITRIUM (CAYMAN ISLANDS) HANDELS AG and Miklos Vendel, Plaintiffs Below, Appellees.

No. 192, 1998.

Supreme Court of Delaware.

Submitted: Nov. 10, 1998.
Decided: Nov. 19, 1998.

David A. Jenkins of Smith, Katzenstein & Furlow, LLP, Wilmington, and Allan M. Pepper (argued) of Kaye, Scholer, Fierman, Hays & Handler, New York City, for Appellants.

Thomas J. Allingham II (argued) and James L. Love of Skadden, Arps, Slate, Meagher & Flom, LLP, and Cathy L. Reese of Blank, Rome, Comiskey & McCauley, Wilmington, for Appellees.

Before VEASEY, C.J., and HARTNETT and BERGER, JJ.

PER CURIAM.

In this appeal, we affirm the trial court's award of attorneys' fees under the bad faith exception to the American Rule against fee-shifting. The Court of Chancery awarded attorney fees after making specific findings of bad faith. Limiting ourselves to the facts of this case, we are asked to decide whether these findings provide sufficient justification for the award. We find that they do.

### Facts

We summarize briefly the facts as found by the Court of Chancery and refer to the various opinions of that court for a more complete statement.[1]

In 1984, Miklos Vendel and H. Frederick Johnston formed Technicorp International II, Inc., a Delaware Corporation ("TCI II") as the acquisition vehicle for the purchase of Statek Corporation ("Statek"), a California-based manufacturer of micro-electronic components. After the acquisition of Statek as a wholly-owned subsidiary of TCI II, Johnston served as chairman of the board of directors, president and treasurer of TCI II. Similarly, Sandra Spillane, Johnston's long-time business associate, served as a director, vice president and secretary of TCI II. From the beginning, Vendel took no active role in the operation of TCI II and held his shares in TCI II through his corporate nominee, Arbitrium (Cayman Islands) Handels AG ("Arbitrium" and together with Vendel, "Vendel").

Over the next eight years, Vendel commenced several attempts to obtain financial information concerning TCI II. After discovering that Johnston and Spillane had secretly converted his voting shares to non-voting shares through a 1985 charter amendment and that his stock certificate recited fewer shares than he believed he owned, he commenced a statutory "books and records" action (the "Section 220 action") in the Court of Chancery against Johnston and Spillane (the "Defendants").[2] Vendel successfully moved for expedited proceedings, a motion opposed by the Defendants.

After discovery, the parties settled the Section 220 action. Pursuant to the settlement, Vendel received documentation that proved he was TCI II's majority shareholder. Armed with this knowledge, Vendel executed a written consent removing the Defendants as directors and officers of TCI II. The Defendants refused to honor this written consent, forcing Vendel to bring an action against the Defendants and TCI II as a nominal defendant in the Court of Chancery under 8 *Del. C.* § 225 for a determination that he had validly removed them as directors and officers of TCI II. Vendel suc-

---

1. The principal reported opinion on the attorneys' fee issue is *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del.Ch., 705 A.2d 225 (1997). *See also Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del.Ch., C.A. No. 13506, 1998 WL 155550, Jacobs, V.C. (March 30, 1998) ("*Ltr. Op. 3/30/98*"); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del. Ch., C.A. No. 13506, Jacobs, V.C. (Oct. 10, 1997) ("*Op. 10/10/97*"); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del.Ch., C.A. No. 13506, 1997 WL 589030, Jacobs, V.C. (Sept. 17, 1997); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del.Ch., C.A. No. 13506, 1996 WL 12149, Jacobs, V.C. (Jan. 5, 1996) ("*Op. 1/5/96*"); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del. Ch., C.A. No. 13506, 1995 WL 606310, Jacobs,

V.C. (Sept. 25, 1995) ("*Ltr. Op. 9/25/95*"); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del.Ch., C.A. No. 13506, Jacobs, V.C. (Nov. 21, 1994); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, Del.Ch., C.A. No. 13506, Jacobs, V.C. (Oct. 19, 1994) ("*Ltr. Op. 10/19/94*"); *Arbitrium (Cayman Islands) Handels AG v. Johnson*, Del.Ch., C.A. No. 13506, 1994 WL 586828, Jacobs, V.C. (Sept. 23, 1994) ("*Ltr. Op. 9/23/94*").

2. *See 8 Del. C.* § 220. *Arbitrium Handels AG v. Technicorp International II*, Del. Ch., C.A. No. 13240, Chandler, V.C., 1994 WL 89017 (Feb. 4, 1994). Vendel also sued TCI II as a nominal defendant in the Section 220 action.

cessfully moved for expedited proceedings, again opposed by the Defendants. After two separate successful motions to compel, Vendel finally obtained discovery from the Defendants.

Pending the decision of the Court of Chancery, the parties executed a Standstill Agreement wherein the Defendants agreed that TCI II would not make any deals with the Defendants, or any entities controlled by or affiliated with the Defendants, without first giving Vendel seven days notice. Less than three months after the execution of the Standstill Agreement, the Defendants unilaterally repudiated it, claiming that the proceedings were taking too long and that they considered themselves no longer legally bound. After briefing this matter, the court found that the Defendants' position had "no basis in law" and was "entirely without factual support."[3] Following this finding, the Defendants moved to postpone the trial. The court denied this motion.[4]

After conclusion of the trial, but before any ruling by the Court of Chancery, Vendel discovered that TCI II had recently awarded Johnston a $500,000 salary. In response to Vendel's claim that this violated the Standstill Agreement, Johnston repudiated his earlier testimony that he had never received compensation from TCI II, claiming instead that this award was in line with his previous compensation from TCI II.[5] The court, finding that the Defendants had violated the Standstill Agreement "under any view of the matter," ordered Johnston to return $775,000

to TCI II and converted the Standstill Agreement into a formal order of the Court.[6]

On January 6, 1996, the Court of Chancery ruled that Vendel properly removed the Defendants as directors and officers of TCI II.[7] The court found that the Defendants had demonstrated a pattern of attempting to mislead the court and their adversaries. In fact, the court found that the Defendants manufactured evidence, such as an alternative loan ledger, to support their claim. This Court affirmed the Court of Chancery's decision on the merits.[8]

Following the adjudication of this claim, Vendel moved for an award of the attorneys' and expert witness fees incurred in successfully prosecuting the Section 225 action.[9] The court found that the Defendants' conduct both before and during the litigation "established a highly disturbing pattern of deceitful, bad faith conduct that could only have been intended to delay the inevitable day of reckoning, and to enable the defendants to continue mulcting the corporation without detection."[10]

The court found that the Defendants' pre-litigation conduct provided evidence and motive for their later bad faith tactics in delaying and obstructing Vendel's attempt to gain control of TCI II.[11] As to their conduct during the litigation, the court found that the documents relied on by Vendel were created by the Defendants and that the documents relied on by the Defendants were either "en-

**3.** *Ltr. Op.* 9/23/94.

**4.** *Ltr. Op.* 10/19/94.

**5.** Johnston had previously testified that the payments totaling $6 million he received from TCI II were merely loans. Now he testified that this money was, in fact, salary.

**6.** *Ltr. Op.* 9/25/95.

**7.** *Op.* 1/5/96.

**8.** *Johnston v. Arbitrium (Cayman Islands) Handels AG,* Del.Supr., 683 A.2d 59, 1996 WL 539819, Hartnett, J. (Sept. 17, 1996) (Order).

**9.** Vendel also requested fees for the prosecution of the earlier Section 220 action, but the court

denied this portion of the motion, finding that without an adjudication of that claim, the record was insufficiently complete to support a finding of bad faith. Vendel does not appeal this finding.

**10.** *Arbitrium,* 705 A.2d at 233.

**11.** This earlier conduct included the 1985 Charter Amendment removing Vendel's voting rights without his knowledge or consent, a 1992 Charter Amendment tripling TCI II's outstanding shares without Vendel's knowledge or consent, the $6,000,000 in payments (recorded as undocumented, interest-free loans on TCI II's books) made by TCI II and Statek to the Defendants between 1984 and 1992 and Johnston's failure to ever pay his agreed-to share of capital contribution. *See id.* at 228.

tirely unpersuasive" or "manufactured as evidence for use at the trial." [12]

Specifically, the court found three instances of bad faith on the part of the Defendants.[13] First, they misled the court to compel discovery to determine whether Arbitrium was merely a nominee of Vendel's. At trial, the Defendants testified that they knew since 1984 that Arbitrium was merely a nominee of Vendel's, thereby removing any need for the lengthy depositions on this question ordered by the court. Second, the court identified several instances where the Defendants changed their sworn testimony at trial or falsified evidence. Finally, the Court pointed to the Defendants' violation of the Standstill Agreement, once again based upon sworn testimony changed to suit the interests of the Defendants. The court found that Defendants had acted in bad faith and that Vendel was entitled to reasonable attorneys' and experts fees for the entire cost of the litigation.[14] But finding that Vendel did not offer sufficient proof of these costs, the court ordered further proceedings to determine a reasonable award.[15]

On October 10, 1997, the Court of Chancery found that the total amount spent by the Defendants in fees ($1,114,566.57) would serve as the minimum amount for Vendel's recovery.[16] Because Vendel sought an additional $606,375 in fees, the court determined that the Defendants were entitled to reasonable discovery including a one day deposition of Vendel's counsel, Thomas J. Allingham, II, Esq.[17]

On March 30, 1998, after completion of discovery, the Court of Chancery awarded all but $51,886.72 of the fees requested by Vendel.[18] It found the Defendants' arguments meritless, including the argument that Vendel's attorneys never made available the original time records of all attorneys working on this case. The final fee award totaled $1,644,952.00.[19]

### General Principles of Fee Shifting

■ Since the United States Supreme Court disallowed an award of attorneys' fees to the winning party in a 1796 admiralty matter,[20] the courts of this nation have generally followed what is commonly referred to as the American Rule. Under the American Rule, absent express statutory language to the contrary, each party is normally obliged to pay only his or her own attorneys' fees, whatever the outcome of the litigation.[21] This stands in stark contrast to the English Rule, practiced in most other nations, where the loser of a litigated matter usually must pay the legal expenses of the victorious party.[22] The courts of this nation, including this Court, have recognized several exceptions to the American Rule. The relevant one for this case is the bad faith exception.

The United States Supreme Court has used the bad faith exception to the American Rule to uphold the award of attorneys fees.[23]

12. *Id.* at 234–35.

13. *Id.* at 235–37.

14. *Id.* at 237.

15. *Id.*

16. *Op.* 10/10/97.

17. *Id.*

18. *Ltr. Op.* 3/30/98. The disallowed fee encompassed the costs of an expert witness assisting in the preparation of briefs. The court found that Vendel had not satisfactorily shown the reasonableness of that fee.

19. This figure includes the withdrawal of Vendel's request for two expenses totaling $24,-103.21 since the records of those expenses were not sufficiently detailed to determine if they related solely to the Section 225 action. *Id.*

20. *Arcambel v. Wiseman,* 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796).

21. *See generally* John F. Vargo, *The American Rule on Attorney Fee Allocation: The Injured Person's Access to Justice,* 42 AM. U.L. REV. 1567 (1993).

22. *Id.*

23. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 57, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (finding that the defendant deliberately misused the judicial process by harassment, delay and waste of resources to the point that the court was within its discretion to vindicate itself and compensate the plaintiff); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. United States ex rel. Indus. Lum-*

This Court has also previously accepted bad faith conduct of a party to the litigation as a valid exception to the American Rule.[24] Although there is no single definition of bad faith conduct, courts have found bad faith where parties have unnecessarily prolonged or delayed litigation,[25] falsified records[26] or knowingly asserted frivolous claims.[27]

### Application of Bad Faith Exception Here

■ This Court reviews the award of fees under exceptions to the American Rule to determine if the Court of Chancery abused its discretion in awarding such fees.[28]

■ In this case, the Court of Chancery made definitive findings of fact showing bad faith. It pointed to specific instances during the course of the trial demonstrating that the Defendants' primary goal was to extend the litigation and therefore their control over TCI II. In addition, the court found that the Defendants' conduct prior to the litigation served as evidence of the motive and intent behind their delaying tactics.

■ The Defendants object to the use of the pre-litigation evidence in determining bad faith. They correctly point out that the bad faith exception does not apply to conduct that gives rise to the substantive claim itself.[29] But this does not preclude the Court of Chancery, in its discretion, from using this information as it did, for the sole purpose of determining whether the Defendants defended this action in bad faith, and not to enhance Vendel's recovery.[30] The Court of Chancery,

after careful deliberation, found that the conduct of the Defendants rose to the level of bad faith because they had no valid defense and knew it. The Court specifically found that they unnecessarily required the institution of litigation, delayed the litigation, asserted frivolous motions, falsified evidence and changed their testimony to suit their needs. Since the Defendants constructed their entire defense in bad faith, the Court of Chancery did not abuse its discretion in awarding Vendel his full reasonable attorneys' fees.

### Determination of Attorneys' Fees

■ The Defendants further object to the determination by the Court of Chancery of the reasonable attorneys' fees awarded to Vendel. They claim they needed further discovery to determine whether the fees claimed by Vendel and his attorneys were reasonable. They point to the fact that Vendel's attorneys never supported his claim with original time sheets even after a demand therefor that was denied by the court. Instead, Vendel's attorneys provided affidavits showing the hours spent on this matter by each attorney, with each attorney's hourly rate. In addition, the Defendants had the opportunity to, and did, depose Allingham regarding any further questions they had concerning the work product claimed by Vendel as his reasonable fees and expenses.

The Court of Chancery balanced several factors in determining that the fees charged were reasonable. First, it hesitated to per-

ber Co., 417 U.S. 116, 129–30, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) (discussing bad faith as a valid exception to the general rule against fee shifting); Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

**24.** Brice v. State of Delaware, Dept. of Correction, Del.Supr., 704 A.2d 1176, 1179 (1998); Tandycrafts, Inc. v. Initio Partners, Del.Supr., 562 A.2d 1162, 1164 (1989).

**25.** Chambers, 501 U.S. 32, 111 S.Ct. 2123.

**26.** See U.S. Indus., Inc. v. Touche Ross & Co., 10th Cir., 854 F.2d 1223, 1243 (1988) (finding no bad faith because there was insufficient proof that documents in question were falsified).

**27.** Roadway Express, 447 U.S. at 762, 100 S.Ct. 2455.

**28.** See Sugarland Indus., Inc. v. Thomas, Del. Supr., 420 A.2d 142, 149 (1980); Treves v. Servel, Inc., Del.Supr., 154 A.2d 188 (1959).

**29.** Shimman v. International Union of Operating Engineers Local 18, 6th Cir., 744 F.2d 1226, 1230 (1984) (stating that courts should take care to distinguish between the defendant's bad faith in maintaining the action from the acts that gave rise to the action), cert. denied 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985).

**30.** Roadway Express, 447 U.S. at 766, 100 S.Ct. 2455 (bad faith "may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation" (emphasis supplied)).

mit full-blown discovery on this issue, especially considering the bad faith use of such devices by the Defendants through the course of this litigation to delay justice unduly. Second, it noted that Vendel had committed to paying the fees, and had already begun to do so, regardless of the outcome of the litigation. This evidenced Vendel's subjective belief that the fees were reasonable, as he would not agree to pay fees that he considered unreasonable. Finally, the court noted that the hourly fees charged by Vendel's attorneys were only slightly higher than the hourly fees charged by the Defendants' own attorneys. In essence, the court found that, but for the Defendants' bad faith in defending this litigation, Vendel would not have incurred these fees. The court reached similar conclusions with regard to items such as disbursements and expert witness fees.

 The Court of Chancery has broad discretion in fixing the amount of attorney fees to be awarded. Absent a clear abuse of discretion, this Court will not reverse the award.[31] On our review of the record, we cannot find that the Court of Chancery abused its discretion in the methodology it used in determining the proper fee award.

### Conclusion

In light of the foregoing, we find that the Court of Chancery applied the correct legal principle, properly applied it to the facts of this case and did not abuse its discretion in any regard. Accordingly, we affirm the award of fees and expenses to Vendel in the amount of $1,644,952.00.

---

**31.** *See Chavin v. Cope,* Del.Supr., 243 A.2d 694 (1968).