**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Decided: June 28, 2018

Basil C. Kollias, Esquire
Douglas J. Cummings, Jr., Esquire
Kollias Law, LLC
3513 Concord Pike, Suite 3300
Wilmington, Delaware 19803

Kelly E. Farnan, Esquire
Travis S. Hunter, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

RE:  *K&G Concord, LLC et al. v. Charcap, LLC et al.*,
C.A. No. 12563-VCMR

Dear Counsel:

This letter opinion resolves the parties' cross motions for attorneys' fees and costs.  For the reasons set forth below, I deny Defendants' motion for attorneys' fees and costs and deny Plaintiffs' cross-motion for attorneys' fees and costs.  This letter opinion assumes familiarity with the facts outlined in the Court's August 1, 2017 memorandum opinion and focuses only on those facts pertinent to the resolution of the pending motions for attorneys' fees and costs.

## I.    BACKGROUND[1]

The underlying dispute arose after Defendants, Charcoal Pit's owners, erected a fence to prevent cars from driving through its property to the neighboring Claymont Steak Shop, which Plaintiffs own.[2]  Plaintiffs claimed that there was an easement by prescription, by estoppel, and by implication over the Charcoal Pit property that allows cars to reach Claymont Steak Shop.[3]  Relevant to this motion, a title search by Plaintiffs showed that no recorded easement existed, and Plaintiffs certified the same to two government agencies before filing this action.[4]  As part of their easement by estoppel claim, Plaintiffs also argued that the record plan for the "2530 Property," a property also owned by Defendants that is further south of Plaintiffs' property,  requires that the owner of that property "pursue a cross-access agreement with the parcel to the north[.]"[5]  Plaintiffs claimed that the "parcel to the north" referred to their property instead of the parcel directly to the north, which

---

[1]    Terms not otherwise defined have the same meaning as in the Court's August 1, 2017 memorandum opinion.

[2]    *K & G Concord, LLC v. Charcap, LLC*, 2017 WL 3268183, at *1 (Del. Ch. Aug. 1, 2017).

[3]    *Id*. at *8.  Plaintiffs dropped their easement by implication claim before trial.

[4]    *Id*. at *9, n.126.

[5]    *Id*.

Defendants own.[6] The Court ultimately found that no easement by prescription or estoppel existed. Thus, Defendants were within their rights to construct a fence on their private property, and Plaintiffs' claims were denied.[7]

On October 20, 2017, Defendants moved for attorneys' fees and costs. Defendants filed their opening brief in support of that motion on December 7, 2017. Plaintiffs filed their brief in opposition to Defendants' motion for attorneys' fees and costs on January 31, 2018, and cross-moved for attorneys' fees and costs on the same date. Thereafter, the parties briefed both motions for attorneys' fees and costs, and the Court heard oral argument on the cross motions on May 17, 2018.

## II.    ANALYSIS

Delaware follows the American Rule, which generally requires that, "regardless of the outcome of litigation, each party is responsible for paying his or her own attorneys' fees."[8] "The bad faith exception to the American Rule applies in cases where the court finds litigation to have been brought in bad faith or finds that a party conducted the litigation process itself in bad faith, thereby unjustifiably

---

[6]     *Id.*

[7]     *Id.*

[8]     *In re SS & C Techs., Inc. S'holders Litig.*, 948 A.2d 1140, 1149 (Del. Ch. 2008).

increasing the costs of litigation."[9]  A trial court may grant a bad faith fee award during the pendency of ongoing litigation "as a sanction for making frivolous legal arguments or engaging in bad-faith litigation tactics."[10]  To justify an award under the bad faith exception, "the Court must conclude that the party against whom the fee award is sought has acted in subjective bad faith."[11]  "In order for a party's conduct to constitute bad faith, that conduct must be 'egregious.'"[12]  "The bad faith exception is not lightly invoked, because '[t]he party seeking a fee award bears the stringent evidentiary burden of producing clear evidence of bad-faith conduct.'"[13] "[L]awyers should think twice, three times, four times, perhaps more before seeking Rule 11 sanctions or moving for fees under the bad faith exception. . . . These types

---

[9]     *Beck v. Atl. Coast PLC*, 868 A.2d 840, 850-51 (Del. Ch. 2005).

[10]    *In re Del Monte Foods Co. S'holders Litig.*, 2011 WL 2535256, at *6 (Del. Ch. June 27, 2011).

[11]    *Reagan v. Randell*, 2002 WL 1402233, at *3 (Del. Ch. June 21, 2002).

[12]    *In re Carver Bancorp, Inc.*, 2000 WL 1336722, at *2 (Del. Ch. Aug.28, 2000) (quoting *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 231 (Del. Ch. 1997), *aff'd*, 720 A.2d 542).

[13]    *Beck*, 868 A.2d at 851 (quoting *Arbitrium*, 705 A.2d at 232).

of motions are inflammatory."[14] "An unwarranted motion for fee shifting under the bad faith exception can itself justify a finding of bad faith and fee shifting."[15]

Defendants argue that the Court should shift attorneys' fees and costs because Plaintiffs brought frivolous claims, and Plaintiff's counsel pursued "baseless theories" and engaged in questionable litigation tactics.[16] Defendants assert that the claims were frivolous because (1) Plaintiffs "were aware that no easement existed over the property from various sources[;]"[17] and (2) Plaintiffs' Amended Complaint either (a) "directly contradicted" statements made to government agencies before the litigation or (b) contained facts that Plaintiffs "never had any evidence of."[18] Defendants also argue that fee shifting is warranted because Plaintiffs' counsel (1) "pursued the baseless theory that certain notes on plans for 2530 Concord Pike required Defendants to provide Plaintiffs with an easement over the Charcap

---

[14]     *Katzman v. Comprehensive Care Corp.*, C.A. No. 5892-VCL, at 13 (Del. Ch. Dec. 28, 2010) (TRANSCRIPT).

[15]     *Coughlin v. S. Canaan Cellular Invs., LLC*, 2012 WL 2903924, at *1 (Del. Ch. July 6, 2012).

[16]     Defs.' Opening Br. 15.

[17]     *Id*. at 26 (citing *K & G Concord*, 2017 WL 3268183 at *10).

[18]     *Id*. at 34.

property[;]"[19] and (2) "engaged in a pattern of conduct designed to drive up the costs of the litigation and to obfuscate discovery."[20]  Specifically, Defendants claim that Plaintiffs' counsel "littered the record" with speaking objections, directed a witness not to answer at a deposition, stopped a deposition shortly after it began requiring the Court to then order that the deposition proceed, served subpoenas "with no notice that included dates for deposition that [he] refused to move," missed every deadline imposed in the case scheduling order, used discovery search terms picked by his client without Defendants' input, and sent emails to opposing counsel threatening sanctions.[21]

Plaintiffs respond that they litigated in "subjective good faith" and that Plaintiffs' counsel's conduct is not evidence of the "ilk of egregiousness or fraud necessary for bad faith."[22]  Plaintiffs assert that they "always believed" an unrecorded easement existed and that their theory as to the notes on the plan was not baseless because there were competing interpretations of the notes.[23]  Plaintiffs also

---

[19]     *Id*. at 36.

[20]     *Id*. at 37.

[21]     *Id*. at 18-19, 38.

[22]     Pls.' Answering Br. 1.

[23]     *Id*.

point out that Defendants never filed a motion to compel related to Plaintiffs' discovery obligations and that Defendants "pressed their counterclaims knowing they had no damages."[24] With respect to the conduct of Plaintiffs' counsel at depositions, Plaintiffs point out that Defendants "have not (and cannot) cite a single instance of witness coaching," and that the "issues with [the] deposition . . . was [Defendants' counsel's] (a) unwillingness to accept a running objection against disclosure of legal strategy and (b) personal attack on Mr. Kollias in his capacity as a senior Member of our Bar."[25] Plaintiffs also cross-move for a "counter-award" arguing that Defendants' motion is improper.[26]

Defendants respond that the distinction between a recorded and unrecorded easement is "immaterial" because "Plaintiffs told the [government agencies] that cross-access with the Charcap property was not viable and that the owner would resist cooperation."[27] Defendants also argue that information relied on by Plaintiffs to bring their claims—including "deed histories/historical aerial photographs," interviews "with senior-citizen customers," "a report prepared by [an environmental

---

[24]     *Id*. at 42.

[25]     Pls.' Reply Br. 16.

[26]     Pls.' Answering Br. 1.

[27]     Defs.' Reply Br. 4-5.

survey company hired by Plaintiffs] containing telephone listings," and "recent photographs and Google Earth documents"—gave "[no] indication that an easement existed between the 2720 property and the Charcap property or that anyone . . . ever used the easement Plaintiffs tried to obtain through this litigation."[28]

After examining the "totality of circumstances" in this case,[29] I find that the bad faith exception is inapplicable. Plaintiffs' theory of the case may have shifted, but their argument that an unrecorded easement existed is not frivolous. Plaintiffs certified to government agencies that no easement existed, but Plaintiffs assert that they subjectively believed that they represented to those agencies that no *recorded* easement existed.[30] Further, Plaintiffs are permitted in their complaint to allege facts "on information and belief" even though they may lack evidence to prove that fact at the time of pleading. Finally, Defendants argue that "Plaintiffs pursued the baseless theory that certain notes on plans for 2530 Concord Pike required

---

[28]     *Id*. at 7.

[29]     *Judge v. City of Rehoboth*, 1994 WL 198700, at *2 (Del. Ch. Apr. 29, 1994).

[30]     Plaintiffs point out that non-party Grant H. Gregor, a professional land surveyor who was engaged by Plaintiff K & G to develop a site and parking plan for the Plaintiffs' property, testified that the government agencies "are not interested in unrecorded, common-law easements during the plan review and approval process." Pls.' Answering Br. 8 (citing Oral Arg. Tr. 600-01). Thus, Plaintiffs assert that they would have no reason to certify to those government agencies that no unrecorded easements existed.

Defendants to provide Plaintiffs with an easement over the Charcap property."[31] The Court found that "the document itself contradicted this theory," but as Plaintiffs assert, there were competing interpretations of the notes and the plans, including what parcel the plans referred to.[32] Thus, even though the theory was weak, Plaintiffs assertion of it does not rise to the level of bad faith required to shift fees.

Plaintiffs' counsel's litigation conduct also does not rise to the level of egregiousness required by the bad faith exception to shift fees. I note, however, that some of his conduct "flirted with a finding of bad faith and Rule 11 sanctions."[33] "The issue of discovery abuse, including lack of civility and professional misconduct during depositions, is a matter of considerable concern to this Court."[34] But

---

[31]   Defs.' Opening Br. 17. Defendants also argue that Plaintiffs' believed their easement by implication claim was baseless because "[o]nly when faced with Defendants' motion for summary judgement Plaintiffs attempt[ed] to withdraw their easement by implication claim." *Id*. at 28. Merely withdrawing a claim in the face of a summary judgment motion is not bad faith. Defendants also claim that Plaintiffs' tortious interference claim related to a contract with Republic Services, Inc. ("Republic") for dumpster removal was baseless because "Plaintiffs never had an enforceable contract for dumpsters nor was there ever a breach of any agreement with Republic." *Id*. at 29-30. Although the claim may have been weak, I am not convinced that it rises to the level of bad faith required to shift fees.

[32]   *K & G Concord*, 2017 WL 3268183 at *10.

[33]   *In re Carver Bancorp, Inc.*, 2000 WL 1336722, at *3 (Del. Ch. Aug. 28, 2000).

[34]   *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 52 (Del. 1994).

Defendants never moved to compel document production or otherwise raised

Plaintiffs' counsel's alleged document discovery abuse before moving for sanctions.

In addition, Plaintiffs' counsel is relatively inexperienced in litigating in this Court.

Thus, I decline to shift fees.[35] But I remind counsel of former-Justice Sandra Day

O'Connor's wise words:

---

[35] Defendants point to several cases which they contend support their argument that Plaintiffs' counsel's conduct was so egregious as to justify an award of attorneys' fees, but these cases are all factually distinguishable from the instant case. *Reagan*, 2002 WL 1402233, at *5 (finding an "egregious example of bad faith warranting the shifting of attorneys' fees" where the "foundation for [the defendant's] position" was a "forged Shareholders Agreement" submitted to this Court); *Ensing v. Ensing*, 2017 WL 880884, at *12 (Del. Ch. Mar. 6, 2017) (finding bad faith warranting a shifting of attorneys' fees where the defendant's counsel presented "sham documents" and "violated the Court's status quo order, forced [the plaintiff] to depose him twice because he dumped a cache of documents on her at his first deposition (after the document production deadline in the trial scheduling order), intentionally ignored a court order to produce discovery relating to the sham documents and then made up a reason why he couldn't attend the trial as scheduled"); *In re Fuqua Indus., Inc. S'holders Litig.*, 752 A.2d 126, 134 (Del. Ch. 1999) (finding bad faith warranting a shifting of attorneys' fees where the plaintiffs' counsel "supplant[ed] a witness in a deposition" by "interruptions, interferences and mid-deposition coaching" in contravention of Court of Chancery Rule 30); *Paramount Commc'ns, Inc.*, 637 A.2d at 53-55 (finding the defendant's counsel's "unprofessional behavior to be outrageous and unacceptable" where he "continually interrupted the questioning, engaged in colloquies and objections which sometimes suggested answers to questions and constantly pressed the questioner for time throughout the deposition"); *Phillips v. Firehouse Gallery, LLC*, 2010 WL 3220677, at *2 (Del. Ch. Aug. 9, 2010) (awarding fees of $5,000 where plaintiffs' counsel scheduled a deposition on short notice while defendant's counsel was on a family vacation "[without] asking the witness for alternative dates"); *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 508 (Del. 2005) (affirming this Court's finding of bad faith warranting a shifting of attorneys' fees where plaintiffs' counsel "made excessive and duplicative deposition requests while ignoring their own discovery obligations,"

> [T]he justice system cannot function effectively when the professionals charged with administering it cannot even be polite to one another. Stress and frustration drive down productivity and make the process more time consuming and expensive. Many of the best people get driven away from the field. The profession and the system itself lose esteem in the public's eyes. . . . In my view, incivility disserves the client because it wastes time and energy— time that is billed to the client at hundreds of dollars an hour, and energy that is better spent working on the case than working over the opponent.[36]

Although I have denied Defendants' motion for attorneys' fees and costs, I find that Defendants' motion was not baseless given the conduct of Plaintiffs' counsel discussed above, among other things. Thus, I deny Plaintiffs' cross-motion for attorneys' fees.

## III. CONCLUSION

For the reasons set forth above, I deny Defendants' motion for attorneys' fees and costs, and I deny Plaintiffs' cross-motion for attorneys' fees and costs.

**IT IS SO ORDERED.**

---

"refused to facilitate the scheduling of [a] deposition," and "fail[ed] to provide any substantive answers to [defendant's] discovery requests").

[36] The Honorable Sandra Day O'Connor, "Civil Justice System Improvements," ABA at 5 (Dec. 14, 1993) (footnotes omitted).

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp