COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:      October 19, 2020
Date Submitted:   August 26, 2020

Chad J. Toms, Esquire
Whiteford Taylor Preston LLC
Renaissance Center, Suite 500
405 North King Street
Wilmington, Delaware 19801-3700

Edward J. Fornias, III, Esquire
Law Office of E.J. Fornias, P.A.
615 West 18th Street, Lower Level
Wilmington, DE 19802

RE:   *Keen-Wik Association v. Anthony G. Campisi*
      Civil Action Number:  2019-0616-PWG

Dear Counsel:

Pending before me are a homeowner's motion to vacate a default judgment entered against him regarding alterations to his deck in violation of deed restrictions, and his homeowners' association's motion for contempt and award of attorneys' fees and costs for his failure to comply with the default judgment. I recommend that the Court deny the homeowner's motion to vacate the default judgment and the association's motion for attorneys' fees, but grant costs. I also recommend the Court grant the motion for contempt, extending the time for compliance. This is a final report.

## I.   Background

On August 7, 2019, Plaintiff Keen-Wik Association ("Association") filed a complaint seeking a permanent injunction against Defendant Anthony G. Campisi ("Campisi") for the removal of the portion of his deck extending into the twenty (20) foot setback (from the shore line) in violation of deed restrictions ("Restrictions") on his property at 38189 Keenwik Road, Selbyville, Delaware ("Property").  The Association also contends that Campisi completed construction on the deck without obtaining approval by the Association, as required by the Restrictions.  Campisi was served through the long-arm statute, 10 *Del. C.* §3104, in Cedars, Pennsylvania.[1]  When Campisi did not file an answer or respond to the complaint, the Association filed a motion for default judgment, on November 25, 2019, and a hearing on that motion was held on January 22, 2020.  Campisi received notice of the hearing.[2]  Campisi failed to appear at the hearing and an order of default judgment ("Order") was entered against him on January 22, 2020, granting a permanent injunction that he "remove a deck extension rearward and

[1] The affidavit of service shows Campisi received service by signing for the registered letters on October 23, 2019. Docket Item ("D.I.") 6, Ex. B.

[2] *See* D.I. 10.  The Association's counsel emailed a copy of the notice to Campisi. *Id.*, Ex. B.  And, in a December 14, 2019 email to the Association's counsel, Campisi stated that he was "not going to engage in this law suit, I just don't have the time or energy right now."  D.I. 21, Ex. A; *see also* D.I. 13, ¶ 4.

into the twenty foot setback" on the Property, within 90 days of the Order.[3]

Campisi received notice of the Order.[4]  Receiving no response from Campisi, the

Association contacted him by phone and he "informed counsel that he is aware of

the Order and does not intend to comply."[5]

In response to the Association's May 22, 2020 motion for contempt

("Contempt Motion"),[6] Campisi filed, on July 23, 2020, his opposition to the

Contempt Motion and a motion to vacate the default judgment ("Motion to

Vacate").[7]

## II. Analysis

### A. Should the default judgment be vacated?

Campisi requests that the default judgment be vacated under Rule 60(b)(2),

Rule 60(b)(3) and Rule 60(b)(6).  "Court of Chancery Rule 55(c) permits the court

to set aside a default on the grounds identified in Court of Chancery Rule 60(b)."[8]

---

[3] D.I. 12.

[4] The Association's Counsel sent a copy of the Order by mail and email on or about February 10, 2020. D.I. 13, ¶ 4.  When no action was taken on the deck, Association's Counsel sent a second copy of the Order by regular and certified mail, and email, demanding a response, to Campisi, on or about April 27, 2020. *Id.*, ¶ 4.  The evidence shows the certified notice was signed for on April 29, 2020. *Id.*, Ex. C.

[5] *Id.*, ¶ 4.

[6] *Id.*

[7] D.I. 16; D.I. 17.

[8] *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 112 (Del. Ch. 2017).

Motions to vacate default judgments under Rule 60(b) are addressed to the discretion of the court.[9] "Delaware public policy favors deciding cases on the merits, leading to the inference that '[a]ny doubt should be resolved in favor of the petitioner.'"[10] Rule 60(b) advances "two important values: the integrity of the judicial process and the finality of judgments."[11] "Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[12]

First, I consider whether the judgment should be vacated under Rule 60(b)(2). "Court of Chancery Rule 60(b)(2) affords a disappointed litigant an opportunity to obtain judicial reconsideration of the merits of his claim on account of 'newly discovered evidence.'"[13] "Delaware law is clear that reopening a judgment based on new evidence is disfavored."[14] To succeed

---

[9] *Cf. Old Guard Ins. Co. v. Jimmy's Grille, Inc.,* 860 A.2d 811 (Del. 2004); *Word v. Balakrishnan*, 2004 WL 780134, at *3 (Del. Super. Apr. 13, 2004), *aff'd,* 860 A.2d 809 (Del. 2004).

[10] *Word*, 2004 WL 780134, at *3 (citation omitted); *see also Dishmon v. Fucci*, 32 A.3d 338, 346 (Del. 2011); *Deutsche Bank Nat'l Tr. Co. v. Vleugels*, 2017 WL 2124425, at *2 (Del. Ch. May 10, 2017).

[11] *Oklahoma Firefighters Pension & Ret. Sys. v. Corbat*, 2018 WL 1254958, at *1 (Del. Ch. Mar. 12, 2018) (citation omitted).

[12] *Wilson v. Montague*, 19 A.3d 302 (Del. 2011) (citations omitted); *see also High River Ltd. P'ship v. Forest Labs., Inc.*, 2013 WL 492555, at *6 (Del. Ch. Feb. 5, 2013).

[13] *Norberg v. Sec. Storage Co. of Washington*, 2002 WL 31821025, at *2 (Del. Ch. Dec. 9, 2002).

[14] *Oklahoma Firefighters Pension & Ret. Sys.*, 2018 WL 1254958, at *2.

under Rule 60(b)(2), the moving party must show all of the following: "[1] the newly discovered evidence has come to his knowledge since the [judgment]; [2] that it could not, in the exercise of reasonable diligence, have been discovered for use [before the judgment]; [3] that it is so material and relevant that it will probably change the result . . .; [4] that it is not merely cumulative or impeaching in character; and [5] that it is reasonably possible that the evidence will be produced at the trial."[15]

Campisi argues that the Association waived its ability to exclude the deck extension into the 20-foot setback because the extension existed in the same footprint since Campisi purchased the Property around 20 years ago.[16] He offers photographs of the deck in 2016 and recently, and his statement that the footprint of the deck was unaltered by his 2018 work on the deck, as newly discovered evidence.[17] The Association responds that the photographs are not newly discovered evidence, since Campisi could have discovered them before the entry of the default judgment if he had exercised reasonable diligence.[18]

---

[15] *Id.*, at *1 (citation omitted)*; see also Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *5 (Del. Ch. Feb. 4, 2011) (citations omitted).

[16] D.I. 17, ¶¶ 3-5.

[17] D.I. 16, Ex. 1; Ex. 2; D.I. 17, ¶ 6.

[18] D.I. 20, ¶ 3.

To satisfy the first factor, the newly discovered evidence must have been "in existence and hidden at the time of judgment."[19] The photographs, and Campisi's knowledge about the deck extension's footprint, were in existence at the time of judgment but there is no evidence that they were hidden (from Campisi) at that time. Accordingly, Campisi has failed to meet the first factor under Rule 60(b)(2). In addition, Campisi has not met the second factor because I cannot conclude the evidence could not have been discovered if Campisi exercised reasonable diligence. Campisi possessed this information all along. No reason is shown why, with minimal diligence, he could not have discovered and presented the information in response to the complaint before default judgment was entered. Because he has failed to satisfy these two factors, he is not able to meet his burden for obtaining relief under Rule 60(b)(2).[20]

Campisi also seeks relief under Rule 60(b)(3), relying on the Association's allegation that the deck "now extends into the setback as the result of a recently-

---

[19] *Bachtle v. Bachtle*, 494 A.2d 1253, 1255–56 (Del. 1985) (citations omitted).

[20] Campisi did satisfy at least two of the factors - the information is not merely cumulative or impeaching in character, and it is reasonably possible that the evidence will be produced at trial. And, based on the evidence before me, I cannot conclude that the photographs and related information are "so material and relevant that [they] will probably change the result." *See Norberg v. Sec. Storage Co. of Washington*, 2002 WL 31821025, at *4 (Del. Ch. Dec. 9, 2002) (denying the motion to vacate under Rule 60(b)(2) even though the movant met four out of five factors).

completed extension" to show an "unintentional misrepresentation."[21]  The Association responds that it has not engaged in fraud or misrepresentation that prevented Campisi from fairly and adequately presenting his case.[22]  Rule 60(b)(3) "allows for relief from judgment where the adverse party has engaged in fraud, misrepresentation, or other misconduct."[23]  A Rule 60(b)(3) motion is addressed to the sound discretion of the court.[24]  Under Rule 60(b)(3), if the movant is unable to prove that the misconduct was knowing or deliberate, "[he] may still prevail as long as [he] proves by a preponderance of the evidence that the nondisclosure worked some substantial interference with the full and fair preparation or presentation of the case."[25]  In this case, Campisi does not allege that the Association's misconduct was knowing or deliberate – only that it was "unintentional."  Therefore, he would have to show that the Association's misconduct substantially interfered with his ability to fully and fairly present his case.  Even if I infer that the Association misrepresented the extent of Campisi's 2018 work on the deck, Campisi has not shown that the misrepresentation interfered with his ability to present his case.  He knew from the beginning of the

---

[21] D.I. 17, ¶ 7.

[22] D.I. 20, ¶ 6.

[23] *99-Year Lease Tenants of Lynn Lee Vill. v. Key Box 5 Operatives, Inc.,* 2005 WL 5756435, at *4 (Del. Ch. Aug. 4, 2005).

[24] *Wilson v. Montague*, 19 A.3d 302 (Del. 2011) (citation omitted).

action what the Association alleged and he ignored the litigation for eight months, including for six months after default judgment was entered. Further, Campisi does not offer any reasonable justification for his failure to respond. His request for relief under Rule 60(b)(3) is denied.

Finally, Campisi seeks relief under Rule 60(b)(6), arguing that extraordinary circumstances exist, which he identified in his reply as the Association's failure to discover that the deck's footprint had not changed for 20 years, and the resulting waiver or abandonment of the Association's right to enforce this restriction against him.[26] He argues the interest of justice and fairness weigh in favor of granting him relief. The Association denies that extraordinary circumstances exist to justify vacating the default judgment.[27]

"Rule 60(b)(6) is a catch-all, allowing the Court to vacate a judgment if the movant can sufficiently show 'any other reason justifying relief [from the operation of the judgment].'"[28] "Relief under Rule 60(b)(6) is an 'extraordinary remedy,' and the standard under Rule 60(b)(6) is more exacting than any other

---

[25] *Id.* (citation omitted).

[26] D.I. 22, ¶ 3.

[27] D.I. 20 , ¶ 7.

[28] *CanCan Dev., LLC v. Manno*, 2011 WL 4379064, at *4 (Del. Ch. Sept. 21, 2011) (citing Ct. Ch. R. 60(b)(6)).

ground for relief provided for in the Rule."[29] It "only encompasses circumstances that could not have been addressed using other procedural methods, [that] constitute an 'extreme hardship,' or [when] 'manifest injustice' would occur if relief were not granted."[30] "An adequate showing of extraordinary circumstances does not include 'neglect' by the moving party or its counsel."[31]

Here, Campisi knowingly chose not to take action related to this litigation for many months, or until the consequences for doing so became apparent. I do not find that the circumstances alleged by Campisi (the Association's failure to discover the footprint had not been changed for 20 years and its waiver or abandonment of the right to enforcement), when considered in that context, constitute sufficient grounds, such as extreme hardship or manifest injustice, to justify relief under Rule 60(b)(6).

In summary, because Campisi has failed to justify relief under Rule 60(b)(2), (3) or (6), I recommend that the Court deny the Motion to Vacate.

## B. Should Campisi be held in contempt?

The Association asks the Court to hold Campisi in contempt under Court of Chancery Rule 70(b) and to mandate that Campisi immediately remove the deck

---

[29] *Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *6 (Del. Ch. Feb. 4, 2011) (citations omitted).

[30] *CanCan Dev., LLC*, 2011 WL 4379064, at *4 (citation omitted).

extension and, if he fails to remove the deck extension within 5 days, to authorize the Association to enter the Property and remove the deck extension, assess costs for doing so against Campisi, and place a lien on the Property if Campisi fails to reimburse the costs.[32] Campisi opposes the Contempt Motion, but does not dispute that he had notice of the Order or that he has not removed the deck extension.[33] Instead, he alleges that the footprint of the deck extension is unaltered since he purchased the Property approximately 20 years ago.[34]

"Court of Chancery Rule 70(b) expressly authorizes the Court to find a party in contempt for the party's 'failure . . . to obey or to perform any order.'"[35] "A trial judge has broad discretion to impose sanctions for failure to abide by its orders," so long as so long as the sanctions imposed are "just and reasonable."[36] A party moving "for a finding of contempt bears the burden to show contempt by clear and convincing evidence; the burden then shifts to the contemnors to show

---

[31] *Wimbledon Fund LP*, 2011 WL 378827, at *6.

[32] D.I. 13, at 4-5.

[33] D.I. 16, ¶ 1.

[34] *Id.*, ¶¶ 3, 4; Ex. 1; Ex. 2.

[35] *In re TransPerfect Glob., Inc.,* 2019 WL 5260362, at *9 (Del. Ch. Oct. 17, 2019) (citing Ch. Ct. R. 70(b)), *cert. denied,* 2019 WL 6130807 (Del. Ch. Nov. 18, 2019), and *cert. denied,* 2019 WL 6130807 (Del. Ch. Nov. 18, 2019); *see also Litterst v. Zenph Sound Innovations, Inc.,* 2013 WL 5651317, at *3 (Del. Ch. Oct. 17, 2013) ("Under Court of Chancery Rule 70(b), this Court may find a party in contempt when it fails to obey a Court order of which it had knowledge.").

why they were unable to comply with the order."[37]   And, there must be "an element of willfulness or conscious disregard of a court order."[38]   "[S]anctions for civil contempt should be directed towards coercing compliance with the order being violated and remedying the injury suffered by other parties as a result of the contumacious behavior."[39]   In imposing contempt sanctions, a court "is obligated to use the least possible power adequate to the end proposed."[40]

In this case, the Association shows, and Campisi does not deny, that he had notice of the Order granting default judgment against him and has failed to comply with it.   He offers no evidence as to why he is unable to comply with the Order, only his reasons for disagreeing with the judgment.   Accordingly, I find Campisi in contempt of the Order, which granted injunctive relief requiring that Campisi remove the portion of the deck that extends into the 20-foot setback on the Property within 90 days of the Order.   Next, I turn to what would be "just and

---

[36] *Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1188 (Del. Ch. 2009) (citing *Gallagher v. Long*, 940 A.2d 945 (Del. 2007)).

[37] *TR Inv'rs, LLC v. Genger*, 2009 WL 4696062, at *15 (Del. Ch. Dec. 9, 2009), *aff'd,* 26 A.3d 180 (Del. 2011); *see also Litterst,* 2013 WL 5651317, at *3 ("[Once the moving party meets its] burden of establishing by clear and convincing evidence that a court order was violated[,] . . . the burden then shifts to the contemnor to show why it was impossible to comply with the order or why he otherwise should not be held in contempt.")

[38] *Gallagher*, 940 A.2d 945.

[39] *Aveta Inc.*, 986 A.2d at 1188.

[40] *Id.* (citations omitted).

reasonable" sanctions for the contempt aimed at coercing compliance with the Order. I take into consideration that, during a significant portion of the time Campisi was ordered to remove the deck, COVID-19 emergency measures were in place, resulting in travel restrictions in and out of Delaware (Campisi's primary residence is in Pennsylvania) and practical limitations on non-essential construction work, which may have hampered compliance with the Order up until the Motion to Vacate was filed in July of 2020. Although the circumstances do not justify Campisi's non-compliance, I find they warrant allowing Campisi additional time to comply with the Order, consistent with my obligation to impose the "less possible power" intended to ensure compliance. Therefore, I amend the Order to extend the deadline to allow Campisi 45 days from the date this report becomes final to remove the portion of the deck that extends into the 20-foot setback.[41]

### C. Should the Association's attorneys' fees and costs be assessed against Campisi?

Campisi argues that, if he is held in contempt, the proper measure of attorney's fees would be limited to those incurred in connection with the Contempt Motion and not for the entire case.[42] The Association responds that it is entitled to

---

[41] If Campisi fails to comply with the Order within the extended deadline, and the Contempt Motion is renewed, his previous actions may be considered in determining appropriate sanctions related to that motion, which may include imposing attorneys' fees incurred related to all enforcement actions.

[42] D.I. 16, ¶ 8.

an award of its attorneys' fees, in the amount of $13,666.00, and costs of $1,112.31, under 10 *Del. C.* §348(e), and also under a fee-shifting provision in the Restrictions.[43]

First, I consider the Association's request for attorneys' fees and costs under 10 *Del. C.* §348(e). Under the American Rule, each party is normally responsible for their own attorneys' fees, absent express statutory language to the contrary, a fee-shifting contractual provision, or an equitable doctrine exception, such as the bad faith exception.[44] "In deed restriction cases, 10 *Del. C.* §348 provides a statutory authorization for fee-shifting."[45] Subsection (e) of that statute provides: "[t]he nonprevailing party at a trial held pursuant to the provisions of this section must pay the prevailing party's attorney fees and court costs . . ."[46] Here, the Association did not prevail at trial so it is not entitled to attorneys' fees or costs under section 348(e).[47]

---

[43] D.I. 13, at 4-5.

[44] *Cf. Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1220 (Del. 2013); *Gatz Properties, LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1222 (Del. 2012); *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007); *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998).

[45] *McCaulley Court Maint. Corp. v. Davenport*, 2018 WL 4030781, at *1 (Del. Ch. Aug. 23, 2018); *see also O'Marrow v. Roles*, 2016 WL 3595546, at *2 (Del. Ch. June 27, 2016).

[46] 10 *Del. C.* § 348(e).

[47] *See McCaulley Court Maint. Corp. v. Davenport*, 2018 WL 4030781, at *1 (Del. Ch. Aug. 23, 2018); *Casale v. Bare*, 2009 WL 2425459, at *5 (Del. Ch. Aug. 3, 2009).

Next, the Association contends it should be awarded attorneys' fees under the Restrictions, since paragraph 15 of the Restrictions provides "[i]n the event any of the parties . . . shall have violated . . . any of the foregoing restrictive covenants, it shall be lawful . . . to recover damages resulting from such violations or attempted violations thereof."[48] The American Rule can be modified by contract, including a deed restriction.[49] Here, the issue is whether paragraph 15 constitutes a fee-shifting provision since attorneys' fees do not appear to be mentioned specifically. Generally, attorneys' fees are not recoverable as damages.[50] However, parties may contract to include attorneys' fees as damages.[51] From the information I have available to me, there is no evidence that the Restrictions

---

[48] D.I. 21, ¶ 11. I am unable to review paragraph 15 of the Restrictions in full since no copy of the Restrictions is included in the record.

[49] *See Vill. of Fox Meadow Maint. Corp. v. Kinton*, 2016 WL 6995362, at *3 (Del. Ch. Nov. 14, 2016); *O'Marrow v. Roles*, 2016 WL 3595546, at *2.

[50] *See McAllister v. Schettler*, 1987 WL 33982, at *2 (Del. Ch. Dec. 28, 1987).

[51] *See generally LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 190 (Del. 2009) (discussing that the merger agreement's indemnification clause specifically defines damages to include reasonable attorneys' fees). Attorneys' fees can be awarded as an element of damages in cases "where the underlying (pre-litigation) conduct of the losing party was so egregious as to justify [such] an award." *NuCar Consulting, Inc. v. Doyle*, 2006 WL 1071533, at *3 (Del. Ch. Apr. 17, 2006), *aff'd sub nom. Doyle v. Nucar Consulting, Inc.*, 913 A.2d 569 (Del. 2006); *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 231 (Del. Ch. 1997), *aff'd,* 720 A.2d 542 (Del. 1998). This is "unusual relief . . . applied in only the most egregious instances of fraud or overreaching." *Arbitrium (Cayman Islands) Handels AG*, 705 A.2d at 231 (citation omitted). I do not find circumstances to justify an award of attorneys' fees as an element of damages in this case.

specifically include attorneys' fees as damages.[52]  Therefore, I deny the Association's request for attorneys' fees pursuant to the Restrictions.

In its reply, the Association argues for the shifting of attorneys' fees and costs based upon Campisi's bad faith conduct, which it contends "required the Association to expend fees and costs far beyond what would otherwise have been required."[53]  A well-recognized equitable exception to the American Rule, which applies only in "extraordinary cases," is where the "losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[54]  Courts have "found bad faith where parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."[55]  To find bad faith, a party must have acted in subjective bad faith, which "involves a higher or more stringent

---

[52] Even if I assume *arguendo* that damages include attorneys' fees in this instance, the language in paragraph 15 providing that "it shall be lawful . . . to recover damages" does not, on its face, create an entitlement to damages, or mandate fee-shifting, under the contract. D.I. 21, ¶ 11.

[53] D.I. 21, ¶ 13.  The Association first raises this argument in its reply brief.  Generally, arguments are waived if presented for the first time in a reply brief. *See Zutrau v. Jansing*, 2013 WL 1092817, at *6 (Del. Ch. Mar. 18, 2013) (citing *Thor Merritt Square, LLC v. Bayview Malls LLC*, 2010 WL 972776, at *5 (Del. Ch. Mar. 5, 2010)).  For the sake of completeness, I address this argument in this report. *See generally In re Columbia Pipeline Grp., Inc.*, 2018 WL 4182207, at *4, n. 25 (Del. Ch. Aug. 30, 2018).

[54] *Brice v. State, Dep't of Correction*, 704 A.2d 1176, 1179 (Del. 1998) (citations omitted).

[55] *Gatz Properties, LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1222 (Del. 2012) (citing *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998)).

standard of proof, *i.e.,* 'clear evidence.'"[56]  I do not find Campisi's conduct has risen to the level necessary to find bad faith.  His failure to respond to the action prior to the entry of default judgment, alone, is not evidence of bad faith.  Otherwise, every defaulted party would be acting in bad faith, which contravenes the higher standard set for bad faith conduct.  And, as discussed related to the Contempt Motion, following the default judgment was entered, considerations include the effect of the COVID-19 global pandemic and Campisi's filing of the Motion to Vacate, which do not support a finding of bad faith, without other evidence.

Finally, I recommend granting the Association's request for court costs, in an amount to be determined, in reliance on Court of Chancery Rule 54(d).  Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."[57]  The Association seeks $1,112.31 in costs but has submitted no detailed statement of those costs.  Once this report becomes final,

---

[56] *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 232 (Del. Ch. 1997), *aff'd,* 720 A.2d 542 (Del. 1998) (citations omitted).

[57] *Lynch v. Gonzalez*, 2020 WL 5587716, at *6 (Del. Ch. Sept. 18, 2020), *judgment entered,* (Del. Ch. 2020) (citing Ct. Ch. R. 54(d)).  Allowing costs under Rule 54(d) "does not amount to an attempt by the court to fully compensate a litigant for all the expenses the litigant incurred." *Id.* (citation omitted).  Permitted costs include "court filing fees [and] fees associated with service of process," but not "computer legal research, miscellaneous expenses (such as travel and meals), and the cost of photocopying." *Adams v. Calvarese Farms Maint. Corp.*, 2011 WL 383862, at *6 (Del.

the Association will have 15 days to file a schedule of its costs for the Court to consider in determining the amount of costs to be awarded.

## III. Conclusion

Based upon the reasons set forth above, I recommend denial of Campisi's motion to vacate the default judgment. I also recommend that the Court deny the Association's motion for the award of attorneys' fees, but grant the Association's costs in an amount to be determined. I also recommend the Court grant the motion for contempt, extending the time for compliance until 45 days from the date this report becomes final. This is a final report and exceptions may be filed pursuant to Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

Ch. Jan. 13, 2011) (citation omitted); *Dewey Beach Lions Club v. Longacre*, 2006 WL 2987052, at *1 (Del. Ch. Oct. 11, 2006).