IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BAY CAPITAL FINANCE, L.L.C., | § | |
| | § | No. 239, 2020 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below:  Court of Chancery |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. 2019-0539-KSJM |
| BARNES AND NOBLE | § | |
| EDUCATION, INC., MICHAEL P. | § | |
| HUSEBY, EMILY CHIU, DANIEL | § | |
| DEMATTEO, DAVID GOLDEN, | § | |
| JOHN RYAN, JERRY SUE | § | |
| THORNTON, AND DAVID | § | |
| WILSON, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: January 27, 2021
Decided: March 30, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

On this 30th day of March 2021, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)     The Plaintiff-Appellant in this appeal is Bay Capital Finance, L.L.C. ("Bay Capital").   The Defendants-Appellees are Barnes and Noble Education, Inc. ("BNED") and present or former members of BNED's board of directors.   The order appealed from is a Court of Chancery final order which granted summary judgment in favor of BNED and ordered Bay Capital to pay BNED attorneys' fees

and costs in the amount of $850,617.49 "[i]n view of [Bay Capital's] bad faith conduct and abusive litigation tactics[.]"[1] Bay Capital contends that the Court of Chancery committed two errors in connection with the award of fees and costs. The first is that the Court of Chancery failed to take into consideration Bay Capital's argument that the award of fees and costs should be offset by a mootness fee which Bay Capital claimed under the corporate benefit doctrine. The second is that the Court of Chancery erred to the extent its award of fees and costs "is premised on the flawed factual finding that [Bay Capital], acting through its principal and managing member, Sunil Suri ("Suri"), knowingly verified a false pleading."[2] Bay Capital asks us to remand the case to the Court of Chancery with instructions to cure these two errors and adjust the award of fees and costs accordingly.

(2) Between February and June of 2019, Bay Capital submitted four proposals to purchase BNED's outstanding equity. BNED's board rejected all four proposals. Bay Capital then decided to nominate a competing slate of directors for election at BNED's 2019 annual meeting.

(3) Since August 2015, BNED's bylaws have contained an advance notice provision requiring that a stockholder seeking to nominate director candidates for election at an annual meeting deliver a "notice of nomination" of director candidates

---

[1] *Bay Capital Fin., L.L.C. v. Barnes and Noble Educ., Inc.*, 2020 WL 1527784, at *12 (Del. Ch. Mar. 30, 2020).
[2] Appellant's Op. Br. at 6.

to BNED's secretary "not less than 90 days . . . prior to the first anniversary of the date of the immediately preceding annual meeting."[3] Based on the date of the 2018 annual meeting, the deadline for submitting a notice of nomination of directors for the 2019 annual meeting would be June 27, 2019. The bylaw also requires that the stockholder be "a holder of record . . . at the time of giving the notice[.]"[4] The bylaw further provides that "[t]he chairman of the meeting may refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure."[5] When Bay Capital decided that it wanted to nominate a competing slate of directors, it was not a stockholder of record.

(4) On June 24, 2019, Bay Capital purchased BNED shares through a broker. However, the settlement of the purchase was not completed in time for Bay Capital to be listed as a stockholder of record on BNED's stockholder registry by June 27. Notwithstanding this problem, late in the evening of June 27, Bay Capital submitted a notice of nomination in which it claimed that it was a stockholder of record. BNED's full board considered Bay Capital's notice of nomination at a special meeting held on June 28. It concluded that the notice of nomination was invalid because Bay Capital was not a stockholder of record on June 27. Counsel for BNED then informed Bay Capital of the board's decision. Bay Capital became

---

[3] *Bay Capital Fin., L.L.C.*, 2020 WL 1527784, at *2.
[4] *Id*.
[5] *Id*.

3

a stockholder of record on June 28, a day too late.

(5)   Meanwhile, Daniel Gordon, counsel for Bay Capital, noticed a discrepancy between BNED's bylaw and its 2018 proxy statement.   The proxy statement stated that the deadline for nominating directors was 90 days prior to the date of the next annual meeting, that is, 90 days prior to the 2019 annual meeting. At that time, the date of the 2019 annual meeting had not been announced to stockholders.[6]   The discrepancy between the bylaw and the proxy statement also appeared in the proxy statements for 2016 and 2017.   Gordon notified Suri of the discrepancy between the bylaw and the proxy statement on June 27.   He advised Suri that Bay Capital could exploit this discrepancy by resubmitting its nomination notice and "argu[ing] that we were in compliance with the proxy language."[7]   Suri agreed, and on July 1, 2019 Bay Capital resubmitted its notice of nomination.   In a letter from Bay Capital's counsel to BNED, counsel identified the discrepancy between the bylaw and the 2018 proxy and stated that Bay Capital had "relied on [BNED's] proxy disclosure in formulating its plans and timing in nominating a slate of directors for the Annual Meeting[.]"[8]   BNED rejected the July 1 notice of nomination as untimely under its bylaw.

(6)   Two weeks later, on July 15, 2019 Bay Capital filed a complaint against

---

[6] In June 2019, BNED's board set the date of the 2019 annual meeting for September 25, 2019.
[7] *Bay Capital Fin., L.L.C.*, 2020 WL 1527784, at *6.
[8] *Id.*

BNED and its board in the Court of Chancery. In its complaint, Bay Capital claimed that the discrepancies between the bylaw and the proxy statement created "a trap that by the time they are detected, the Bylaws' deadline may be missed. This exact trap befell Bay Capital when it looked to advance its nominations."[9] It further claimed that "Bay Capital relied on the 2018 Proxy, under which it faced no imminent deadline."[10]

(7) In Count I of the complaint, Bay Capital sought a declaratory judgment establishing that "its nomination notice setting forth a slate of candidates to the BNED Board was valid and should be presented to the shareholders for a vote at BNED's Annual Meeting."[11] Count II asserted a breach of fiduciary duty claim against Michael P. Huseby, BNED's Chief Executive Officer and Chairman of its board, claiming that he breached his fiduciary duties by rejecting Bay Capital's notice of nomination. Count III alleged that BNED's directors had breached their fiduciary duties by "[d]isclosing false, misleading or incomplete information in the Company's Proxy Statements concerning the deadline for submissions to the Annual Meeting and the method of voting to be used at the Annual Meeting."[12] The complaint was verified by Suri.

---

[9] App. to Appellant's Op. Br. at A0050 (Compl. ¶ 2) [hereinafter A__].
[10] A0058 (Compl. ¶ 30).
[11] A0064 (Compl. ¶ 53).
[12] A0065 (Compl. ¶ 60).

(8) When Bay Capital filed its complaint, it also filed a motion to expedite the proceedings. At oral argument on the motion, Bay Capital again contended that the discrepancy between the bylaws and proxy statement "caused confusion about the proper timing and the process for the nomination of directors."[13] The court granted Bay Capital's motion to expedite.

(9) On August 8, 2019, Bay Capital filed a motion for a preliminary injunction seeking to prohibit BNED from holding its 2019 annual meeting. Bay Capital again asserted that it "relied on the Proxy Statements in preparing its slate of director candidates for consideration at the annual meeting, only accelerating the process when it realized the Proxy Statements conflicted internally with the bylaws."[14] The court denied Bay Capital's motion for a preliminary injunction. In doing so, it reasoned that Bay Capital was not likely to prevail on its theory that it relied upon the proxy because discovery had shown that Bay Capital was well aware of the bylaw deadline prior to June 27.

(10) On September 4, 2019, BNED filed a motion for summary judgment and for attorneys' fees and costs. In its answering brief, Bay Capital conceded that Count I of its complaint was moot because by then the BNED 2019 Annual Meeting had already taken place. Bay Capital also conceded that Count III was moot

---

[13] App. to Appellee's Ans. Br. at B005 (Telephonic Oral Arg. & Rulings of the Ct. on Pl.'s Mot. for Expedited Proceedings at 5:10-12) [hereinafter B__].
[14] B055-56 (Pl.'s Op. Br. in Supp. of its Mot. Prelim. Inj. at 15-16).

because BNED's 2019 proxy statement corrected the errors in the earlier proxy statements relating to the nomination of directors. Additionally, in its brief, Bay Capital claimed that "because the corrections certainly occurred as a result of [Bay Capital] filing suit, [Bay Capital] is entitled to its fees and costs because it created a benefit for shareholders by forcing the correction of the inaccurate and misleading statements in the 2016-18 proxy statements."[15]

(11) The Court of Chancery granted BNED's motion for summary judgment on the remaining count, Count II, because the whole board, not Huseby, rejected Bay Capital's attempt to nominate director candidates. It also awarded BNED two thirds of its attorneys' fees and costs "[i]n view of [Bay Capital's] bad faith conduct and abusive litigation tactics[.]"[16] The bad faith conduct cited by the court was Suri's verification of the complaint's allegation that Bay Capital relied on the 2018 proxy statement. The court found the allegation to be knowingly false. It found that Suri was aware of the bylaw's requirements, having been made aware of them as early as April 2019. It found that Suri never relied upon the 2018 proxy statement and was not even aware of it until the June 27 deadline. It also found that Bay Capital continued to assert, falsely, that it relied on the 2018 proxy statement when it presented its motions to expedite and for a preliminary injunction.

---

[15] A0127 (Pl.'s Ans. Br. to Defs.' Mot. for Summ. J. & an Award of Fees & Costs at 9).

[16] *Bay Capital Fin., L.L.C.*, 2020 WL 1527784, at *12. The one-third of fees that the court did not award were attributed to BNED's summary judgment briefing on its claim for fees and costs.

7

(12)    The abusive litigation tactics cited by the court related to Suri's deposition.   The Court of Chancery found that Suri insisted that the deposition take place in London to accommodate his travel plans.   The court also found that he left in the middle of the deposition for two hours to attend meetings he had scheduled for the same day, and unilaterally terminated the deposition in the middle of defense counsel's examination.   The court also found that Suri gave obviously evasive answers.

(13) The court refused to consider Bay Capital's request that the award of fees and costs be offset by a mootness fee in a footnote.   The footnote stated: "Plaintiff argues that it is entitled to a mootness fee in connection with this amendment [to the proxy statement].   But Plaintiff failed to move for mootness fees.   Thus, this decision does not address the merits of Plaintiff's argument."[17]   This appeal followed.

(14) "The Court of Chancery's discretion is broad in fixing the amount of attorneys' fees to be awarded."[18]   "Absent a clear abuse of discretion, we will not reverse the Court of Chancery's award."[19]

(15)    Bay Capital first argues that the Court of Chancery erred by refusing to

---

[17] *Id.* at *12, n.121.

[18] *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) (citing *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 547 (Del. 1998)).

[19] *Id.*

consider its request for a mootness fee.   Del. Ch. Ct. R. 7(b)(1) provides that "[a]n application to the Court for an order shall be by motion[.]"   Bay Capital did not file a motion for a mootness fee.   In the absence of a motion, we cannot say that the Court of Chancery abused its discretion in declining to consider the argument for a mootness fee which Bay Capital made in its answering brief to BNED's motion for summary judgment.

(16)   Bay Capital's second argument is that the Court of Chancery's award of fees and costs is "premised on the flawed factual finding that Suri, acting for Bay Capital, knowingly verified a false pleading."[20]   Bay Capital admits that the evidence shows that Suri was repeatedly informed that Bay Capital must purchase BNED stock in record name by the June 27 deadline in order to comply with BNED's advance notice bylaw.   The facts, however, Bay Capital argues, are insufficient to support a conclusion that Suri understood the procedure for processing a stock purchase well enough to understand that Bay Capital was not a stockholder of record on June 27.   For such a conclusion to be true, it argues, the Court of Chancery would have had to find that Suri understood the legal nuances of being a "purchaser" of stock versus a "registered owner" of stock as of June 27.[21]

(17)   "The party seeking fees must demonstrate by clear evidence that the

---

[20] Appellant's Op. Br. at 17.
[21] *Id*. at 19.

other party acted in subjective bad faith."[22]   The evidence supports the Court of Chancery's finding that Suri acted in bad faith when he verified Bay Capital's allegation that it relied on the 2018 proxy in submitting its nomination of directors. There was evidence that Suri was aware of the bylaw and its requirements well before June 27 and that the allegation of Bay Capital's complaint that it relied on the proxy statement was false, and known by Suri to be false, when he verified the pleading.   The evidence also supports the Court of Chancery's finding that Bay Capital "doubled down" on its misrepresentation that it relied on the 2018 proxy by repeating the misrepresentation during the proceedings on its motion to expedite and its motion for a preliminary injunction.   The Court of Chancery's finding that Bay Capital acted in bad faith in alleging and arguing that it relied on the 2018 proxy is not an abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.

---

[22] *Shawe v. Elting*, 157 A.3d 142, 150 (Del. 2017) (en banc) (citing *Lawson v. State*, 91 A.3d 544, 552 (Del. 2014)).