**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 6, 2023

Kevin M. Regan, Esquire
McDermott Will & Emery LLP
1007 North Orange Street, 10th Floor
Wilmington, DE 19801

Ronald N. Brown, III, Esquire
DLA Piper LLP
1201 North Market Street, Suite 2100
Wilmington, DE 19801

RE: ***Matthew M. Bruckel, MD v. TAUC Holdings, LLC,***
Civil Action No. 2021-0579-MTZ

Dear Counsel:

I write to complete my final decision on this matter in response to the parties' joint letter dated December 1, 2022.[1] I conclude the plaintiff is entitled to documents and communications responsive to what this letter opinion defines as the "Outstanding Requests." I write for the parties.

## I. BACKGROUND

On June 18, 2021, Plaintiff Matthew M. Bruckel, MD served a demand (the "Demand") on Defendant TAUC Holdings, LLC ("Defendant" or "TAUC") under 6 *Del. C.* § 18-305 and Section 11.1(c) of the Amended and Restated Limited Liability Company Agreement of TAUC Holdings, LLC (the "LLC Agreement").[2]

Plaintiff is a "Founder Member" and manager of TAUC, which is managed by a board of managers (the "Board").[3] He holds information rights under the LLC Agreement.[4] As a Founder Member, he may designate a representative eligible "upon reasonable notice and during normal business hours, to inspect the books

---

[1] Docket Item ("D.I.") 58 [hereinafter "Dec. Ltr."].

[2] Joint Exhibit ("JX") 4 [hereinafter "Demand"].

[3] D.I. 38 [hereinafter "PTO"] at § III ¶¶ 1, 9; JX 1 [hereinafter "LLC Agr."] §§ 1.1, 5.1(a).

[4] D.I. 59 [hereinafter "Trial Tr."] at 318; LLC Agr. § 11.1(c).

and records of [TAUC] or any of its Operating Companies and make copies thereof or extracts therefrom."[5]   The only restrictions on those rights are that the documents be "books and records of [TAUC] or any of its Operating Companies," that recipients abide by confidentiality covenants, and that recipients are not entitled to receive "information or materials the disclosure of which would jeopardize any applicable attorney-client privilege or would violate applicable laws concerning the privacy of protected personal information."[6]

Under Section 18-305(b), managers of Delaware limited liability companies "shall have the right to examine all of the information described in [18-305(a)] for a purpose reasonably related to the position of manager."[7]  "A manager of an LLC possesses informational access rights that parallel those enjoyed by a director of a corporation."[8]  Managers have equal rights to access to board information as their fellow managers.[9]  A manager seeking to inspect books and records makes out a *prima facie* case by showing: (i) she is a manager; (ii) she requested company books and records; (iii) the books and records are reasonably related to her purpose as a manager; (iv) her request was within the scope of information rights afforded

---

[5] LLC Agr. §§ 1.1, 11.1(c).

[6] *Id.* § 11.1(c).

[7] 8 *Del. C.* § 18-305(b); *see also id.* § 18-305(f).

[8] *In re P3 Health Grp. Hldgs., LLC*, 2022 WL 16548567, at *29 (Del. Ch. Oct. 31, 2022); *Obeid v. Gemini Real Est. Advisors, LLC*, 2018 WL 2714784, at *2 (Del. Ch. June 5, 2018) ("The language in Section 18–305(b) "is tantamount to that used in 8 *Del*[.] *C.* § 220 with respect to director requests for corporate information.'" (quoting *RED Cap. Inv. L.P. v. RED Parent LLC*, 2016 WL 612772, at *4 (Del. Ch. Feb. 11, 2016))), *aff'd*, 202 A.3d 1124 (Del. 2019); *Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at *5 (Del. Ch. Aug. 30, 2016) ("[T]his Court treats Section 220, and the cases interpreting it, as the corporate analogue to inspection rights under Section 18–305 of the LLC Act." (citing *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 421 n.30 (Del. Ch. July 20, 2007))); 8 *Del. C.* § 220(d) ("Any director shall have the right to examine the corporation's stock ledger, a list of its stockholders and its other books and records for a purpose reasonably related to the director's position as a director.").

[9] *P3 Health Grp.*, 2022 WL 16548567, at *29 (internal quotation marks omitted) (quoting *Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1996 WL 307444, at *5 (Del. Ch. June 4, 1996)).

to her under the limited liability company agreement; and (v) her request was refused.[10]  Plaintiff is undisputedly a manager.[11]

The Demand sought six categories of documents.[12]  On June 25, Defendant responded to the Demand.[13]  TAUC provided documents responsive to the first, second, third, and fifth categories.[14]  On July 6, Plaintiff filed a Verified Complaint for Inspection of Books and Records seeking the same six categories of documents.[15]  On July 30, Defendant answered.[16]

On December 14, 2021, I held a one-day trial.[17]  Trial made clear that Plaintiff has fallen out of communication and favor with the four other TAUC managers, and had been removed as CEO.  Trial also made clear that Plaintiff is angry and desirous of the level of information he had before he was removed as CEO.[18]

Trial left less clear precisely what documents Plaintiff still sought under what categories.  At the conclusion of trial, I concluded:  "Dr. Bruckel is a manager of a Delaware LLC with unfettered access . . . to everything in Section 18-305(a) that is reasonably related to his status as a manager.  He also has a contractual right that doesn't have that proper-purpose restriction."[19]  The best proxy for what is reasonably related to his status as a manager "is what the other

---

[10] *Id.* (citing *Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 129 (Del. Ch. 1969), and *Holdgreiwe v. Nostalgia Network, Inc.*, 1993 WL 144604, at *3 (Del. Ch. Apr. 29, 1993), and 8 *Del. C.* §§ 18-305(f)(2), (g)).

[11] PTO § III. ¶ 1.

[12] Demand at TAUC0000596–97.

[13] JX 6.

[14] *See id.* at TAUC0000046–47.

[15] D.I. 3 [hereinafter "Compl."]; *id.* ¶ 18.

[16] D.I. 9.

[17] D.I. 44; Trial Tr.

[18] *E.g.*, Trial Tr. 195.

[19] *Id.* 318.

managers are being given and documents that reflect how the other managers meet and act collectively do their jobs."[20]   I granted a partial inspection of: "communications establishing, preparing for, transmitting information for the purpose of, or documenting the weekly meetings of the four favored managers that have been occurring by Zoom;" "all materials transmitted in such communications and/or shares at the Zoom meetings," documents and communications reflecting "any action taken over email by those four managers in a managerial capacity not over Zoom," and "any communications or emails following up on or executing on tasks or decisions that were assigned or taken at those meetings."[21]

From there, to focus the parties on the task at hand, I instructed Plaintiff to review Defendant's production, identify responsive documents by Demand category and JX or Bates number, and evaluate what he thought was missing and why he thought it existed.[22]   I instructed Defendant to review its production, identify responsive documents by Demand category and JX or Bates number, and if there are gaps left by nonexistent documents, certify that those documents do not exist.[23]   I refer to this joint document as a "Crib Sheet."

In February 2022, the parties filed a volley of letters regarding Plaintiff's "request[] [for] assistance with post-trial document production."[24]   On March 11, I held the first post-trial status conference.[25]   I reiterated my instructions to the parties and invited Plaintiff to conduct a Rule 30(b)(6) deposition "solely" on "how do the [TAUC] managers do their managing, and what documents reflect the managing that the managers do."[26]   In late June, Plaintiff deposed a TAUC representative.[27]   On July 29, Plaintiff filed letters requesting a second post-trial

---

[20] *Id.* 319.

[21] *Id.* 319–20.

[22] *Id.* 321.

[23] *Id.*

[24] D.I. 47; D.I. 48; D.I. 49.

[25] D.I. 50; D.I. 51 [hereinafter "Mar. Hr'g Tr."].

[26] Mar. Hr'g Tr. 6–7, 13–15.

[27] D.I. 52 (noticing a Rule 30(b)(6) deposition for June 23, 2022); D.I. 53, Ex. A [hereinafter "Crib Sheet"] at 9–10 (dating the Rule 30(b)(6) deposition as both June 23

teleconference and attaching the parties' attempt at the requested Crib Sheet.[28]  On November 1, I held a second post-trial teleconference where I gave additional, and category-specific, guidance to the parties, narrowing the potential universe of outstanding documents (the "November Status Conference").[29]  I asked the parties, should they need further assistance, to submit a joint letter with each side's position on the outstanding issues.[30]  On December 1, the parties filed such a letter (the "December 1 Letter").[31]

As the December 1 Letter confirms, the parties do not dispute that Defendant has declined to produce all of the documents and communications Plaintiff seeks.[32]  The remaining question before the Court is one of scope: the parties dispute whether the outstanding documents and communications Plaintiff has requested are TAUC books and records to which Plaintiff is entitled.

Of the six initial categories of requested books and records, only three remain:[33]

---

and June 27, 2022).  This letter will refer to the parties' cites to that deposition transcript as "TAUC Tr."

[28] D.I. 53; Crib Sheet; D.I. 54.

[29] D.I. 56; D.I. 57 [hereinafter "Nov. Hr'g Tr."] at 12–16.

[30] Nov. Hr'g Tr. 16.

[31] Dec. Ltr.

[32] *Id.*

[33] Trial Tr. 86–87 ("Q.  For instance, Item No. 1 says, 'A current list of the name and last known business, residence or mailing address of each member and manager of TAUC.'  You've received that.  Correct?  A.  Yes."); Nov. Hr'g Tr. 12 ("On Request No. 2, it seems to me that everything that I can tell from this crib sheet that exists has been given.  And so it seems to me that that is the end of that."); *id.* 15 (finding the alleged outstanding documents under Category 6 are outside of the scope of this proceeding).

3.   Copies of notices, minutes, consents, and other material that TAUC has provided to its members and managers on or since February 12, 2021, including but not limited to any documents provided to any manager in advance of or in connection with any board meeting or board business;

4.   Any communications between or among TAUC Chairman Ira Moreland and any manager(s) regarding any board meeting or decision requiring board approval on or since February 12, 2021; [and]

5.   All records and transcripts of any board meeting on or since February 12, 2021 . . . .[34]

Of the remaining categories, the requested documents (the "Outstanding Requests") can be summarized as follows:

a.   All documents (notices, minutes, consents, records, transcripts, and other material) associated with formal or informal Board activities, meetings, or business, including the "weekly group updates";

b.   All contemporaneous Board communications regarding the bolt-on acquisition;

c.   All non-privileged communications from February 12, 2021 to date, sent or received by TAUC Chairman Ira Moreland or any other manager of the Board (other than Dr. Bruckel) relating to TAUC business; and

d.   Any unproduced communications relating to TAUC management meetings, formal or informal.[35]

---

[34] Demand at TAUC0000597; Nov. Hr'g Tr. 13–15.  The Complaint requested only documents dating as far back as April 2021.  Compl. ¶¶ 29, 38.

[35] *See* Nov. Hr'g Tr. 12–15; Crib Sheet at 10–11, 14–15; Dec. Ltr., Ex. A.

## II.     ANALYSIS

### A.     Substantive Scope: Plaintiff Is Entitled To Informal Board Materials.

In considering what constitutes company books and records to which a manager is entitled, the manner in which managers conduct business is important. If the managers conduct business only formally, those formal documents constitute the books and records that should be produced. If the managers conduct business informally, those informal documents are books and records, and a manager is entitled to them.[36] "The existence of formal Board minutes does not eliminate the possibility that informal [B]oard deliberations occurred via email communications among the Board members in advance of the formal Board meetings."[37] Defendant has represented, but not yet certified, that it produced all formal Board materials

---

[36] *Chammas v. Navlink, Inc.*, 2016 WL 767714, at *6–8 (Del. Ch. Feb. 1, 2016); *see Schnatter v. Papa John's Int'l, Inc.*, 2019 WL 194634, at *15–16 (Del. Ch. Jan. 15, 2019), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A3d 933 (Del. 2019); *Lebanon Cnty. Empls.' Ret. Fund v. AmerisourceBergen Corp.*, 2020 WL 132752, at *24–25 (Del. Ch. Jan. 13, 2020), *aff'd*, 243 A.3d 417 (Del. 2020). *Chammas* is factually similar to this case, in which Plaintiff asserts the other managers are freezing him out and conducting business in secret. As in *Chammas*, I have concluded that the secret nature of communications does not, alone, make them books and records that should be produced to Plaintiff. 2016 WL 767714, at *6.

[37] *Alexandria Venture Invs., LLC v. Verseau Therapeutics, Inc.*, 2020 WL 7422068, at *12 (Del. Ch. Dec. 18, 2020).

requested.[38]   If that is true, the Outstanding Requests are for informal Board materials.[39]

Plaintiff has made a proper showing that the informal Board materials he seeks are company books and records, reasonably related to his role as manager, and "likely exist in the form of electronic mail."[40]   First, Plaintiff asserts TAUC has only held four formal Board meetings since June 2021, and Defendant has denied that unproduced formal Board materials exist.[41]   Second, while neither party submitted the deposition transcript to the Court, Plaintiff has represented Defendant's corporate representative Board Chair Ira Moreland testified that, following the Court's ruling at trial, Defendant's managers stopped meeting as an entire group, but instead began holding "weekly group update[s]" in which the CEO and managers, to the exclusion of Plaintiff, would "rotate in" to discuss TAUC business.[42]   The partial Board met upwards of sixty times between the

---

[38] Trial Tr. 321–22 ("As to the company, I would like for Topics 2 through 6—again, this can be by bullet point—what you have given to the plaintiff and what has been requested that does not exist.  And by certifying that something does not exist, you are certifying that you have looked for it.  And that is something that I take seriously."); Nov. Hr'g Tr. 15 ("And to the extent that TAUC has said no additional documents exist under penalty of perjury and under an affidavit or document that's been signed by counsel, I will accept that representation at this juncture.").

[39] *E.g.*, *AmerisourceBergen*, 2020 WL 132752, at *25 ("Informal Board Materials generally will include communications between directors and the corporation's officers and senior employees, such as information distributed to the directors outside of formal channels, in between formal meetings, or in connection with other types of board gatherings.  Informal Board Materials also may include emails and other types of communication sent among the directors themselves, even if the directors used non-corporate accounts." (citations omitted)).

[40] *KT4 P'rs LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 755–56 (Del. 2019).  As explained in the November Status Conference, Plaintiff failed to make the requisite showing that he is entitled to text messages.  Nov. Hr'g Tr. 15.

[41] Crib Sheet at 10 (citing TAUC Tr. 18–19).

[42] *Id.* at 10 ("To circumvent the Court's [trial] ruling while continuing to conduct informal meetings, TAUC now ensures that [non-Bruckel] managers 'rotate in' so not all managers are present at a given meeting, as is now the practice with respect to TAUC's 'weekly group update' attended by Dr. Dinkel, the CEO, Mr. Moreland and other rotating

December 14, 2021 trial and the June 2022 30(b)(6) deposition.[43] In its submissions to the Court, Defendant has not disputed the existence or frequency of these post-trial "weekly group update[s]." Plaintiff has demonstrated TAUC's Board informally conducted or conducts corporate business, that managers acted as managers in settings other than Board meetings with all managers present, and that related emails likely exist.[44]

As to Outstanding Request (a) for documents associated with Board activities, Defendant averred, "the informal meetings were just that, and generally no documents were reviewed at such meetings."[45] From there, Defendant states, "[t]o the extent documents were ever circulated with respect to informal meetings, those were produced in the January 25th production."[46] This only addresses Outstanding Request (a) through January 25 at the latest. Defendant must produce any and all such documents through the present, and certify it has done so.

As to the communications requested in Outstanding Requests (b), (c), and (d), Defendant's December 1 Letter carefully claims it produced manager-level communications, including emails between a subset of managers about informal Board meetings.[47] But Defendant does not specifically address whether it has produced documents responsive to Outstanding Requests (b), (c), and (d), including after January 25, and has not certified that its production is complete.[48] Plaintiff is entitled to non-privileged communications responsive to the Outstanding Requests to or by a manager communicating in his capacity as a manager relating to TAUC business, TAUC management meetings (formal or informal), or the bolt-on acquisition.

---

managers, excluding Dr. Bruckel." (citing TAUC Tr. 39:10–23)); *see also id.* (citing TAUC Tr. 18–19, 39); Dec. Ltr. at 2.

[43] Crib Sheet at 8–10, 14 (citing TAUC Tr. 18–20, 39).

[44] Nov. Hr'g Tr. at 13.

[45] Crib Sheet at 10–11.

[46] *Id.*

[47] Dec. Ltr. at 5.

[48] *See id.*

### B.    Temporal Scope:   Defendant Has An Ongoing Duty To Provide The Same Materials To All Managers.

The December 1 Letter reflects a disagreement as to the temporal scope of Defendant's production obligations.  Remarkably, Defendant takes the position that it does not owe Plaintiff any documents dated after the trial in this matter, and seeks a "final order stating that production is complete."[49]  This position ignores Plaintiff's ongoing statutory inspection rights as a manager and contractual inspection rights as a Founder Member.

As long as Plaintiff is a TAUC manager, Defendant has an ongoing statutory obligation to produce to Plaintiff all books and records reasonably related to his status as a manager.  "Unlike a stockholder, a [manager] is not limited to information that is necessary and essential to a proper purpose.  A [manager]'s right of access is 'essentially unfettered in nature.'"[50]  Managers are fiduciaries, and in order to meet their obligations as such, they must have access to the company's books and records; indeed, they "often ha[ve] a duty to consult them."[51]  While limited liability company managers' fiduciary duties may be limited by the operating agreement,[52] they are not limited to the pendency of a books and records action.  As long as a sitting manager owes fiduciary duties, she is entitled to receive whatever the other managers are given.[53]  Accordingly, companies have an ongoing obligation to provide managers equal access to books and records related to their status as a manager.  In addition and unrelated to his position as a manager,

---

[49] *Id.* at 6.

[50] *Obeid*, 2018 WL 2714784, at *4 (quoting *Kalisman v. Friedman*, 2013 WL 1668205, at *3 (Del. Ch. Apr. 17, 2013), and citing *Intrieri v. Avatex Corp.*, 1998 WL 326608, at *1 (Del. Ch. June 12, 1998)).

[51] *Id.* (quoting *Henshaw*, 252 A.2d at 128).

[52] *E.g. Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 849 (Del. Ch. 2012) ("But the [Delaware Limited Liability Company] Act lets contracting parties modify or even eliminate any equitable fiduciary duties, a more expansive constriction than is allowed in the case of corporations." (citations omitted)), *aff'd*, 59 A.3d 1206 (Del. 2012).

[53] *P3 Health Grp.*, 2022 WL 16548567, at *29 (quoting *Intrieri*, 1998 WL 326608, at *1).

Plaintiff holds an omnipresent contractual inspection right that is not conditioned on the pendency of a books and records action.

Given the facts here and Defendant's apparent willingness to change the way that managers meet to evade its production responsibilities, I will endeavor to be very clear. Defendant must provide all formal Board materials to all of its managers, and to the extent Defendant continues to conduct business informally, it must provide all informal Board materials to all of its managers. Defendant also has an obligation to permit Plaintiff to inspect all TAUC books and records. Should Defendant violate either obligation, Plaintiff may bring a contempt motion.

### C. Fee Shifting

While the so-called American Rule dictates that each party is responsible for its own legal fees, this Court retains discretion to shift fees for bad faith conduct "to deter abusive litigation and protect the integrity of the judicial process."[54] In *Pettry v. Gilead Sciences, Inc.*, this Court granted the Section 220 plaintiffs leave to move for fee-shifting where the defendant "exemplified the trend of overly aggressive litigation strategies by blocking legitimate discovery, misrepresenting the record, and taking positions for no apparent purpose other than obstructing the exercise of Plaintiff's statutory rights" to books and records.[55]

Plaintiff's statutory rights to information, as a manager, are "essentially unfettered in nature."[56] And the LLC Agreement affords him unbounded contractual rights as a Founding Member to nonprivileged books and records.[57] In spite of these rights, Defendant has not been forthcoming with its production. Its defenses at trial bordered on specious: maligning Plaintiff's purpose for seeking documents when that is not a requirement under Section 18-305 or the LLC Agreement; maligning the format of his demand letter and demanding a power of

---

[54] *Montgomery Cellular Hldg. Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) (quoting *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998)).

[55] *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *30 (Del. Ch. Nov. 24, 2020).

[56] *Kalisman*, 2013 WL 1668205, at *3 (quoting *Schoon v. Troy Corp.*, 2006 WL 1851481, at *1 n.8 (Del. Ch. June 27, 2006)).

[57] LLC Agr. § 11.1(c).

attorney; and feigning ambiguity in Plaintiff's document requests. Nor has Defendant been forthcoming with information about how the managers conduct business or what documents exist.[58] Defendant has reportedly gone so far as to change how its managers conduct business to duck the Court's suggested parameters for identifying books and records that had to be produced.[59] And Defendant has taken an astonishing position that it need only produce books and records through trial in this matter, even though Plaintiff's inspection rights are ongoing.[60] It has requested a final order "stating that production is complete,"[61] while ignoring this Court's repeated instructions that Defendant certify it has complied with its production obligations.[62] Defendant's behavior has obstructed Plaintiff's statutory and contractual rights.

Fee shifting may be appropriate here. Accordingly, this letter opinion represents a rule to show cause as to why fees should not be shifted to Defendant in this matter. Defendant should provide a written submission within twenty days of this letter opinion, and Plaintiff can respond. Alternatively, if the parties can resolve this matter privately, they should submit a stipulation of dismissal.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff is entitled to the books and records he seeks in the Outstanding Requests. **IT IS SO ORDERED.**

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[58] *E.g.*, Trial Tr. 292.  TAUC's pretrial brief asserted it could not produce documents that do not exist, but identified only one specific type of nonexistent document.  D.I. 34 at 28.

[59] *Supra* note 42.

[60] Dec. Ltr. at 5 ("Finally, there is no basis, almost a year after trial, for Plaintiff to request to expand the time period at issue by nearly twelve months." (emphasis omitted)).

[61] *Id.*at 6.

[62] *Supra* note 38.

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*